686 S.E.2d 23

**Lloyd Michael NOLAND, R.N., Plaintiff Below, Appellant,**

v.

**VIRGINIA INSURANCE RECIPROCAL and The Reciprocal Group, Inc., A Virginia Corporation; Lisa Hyman, individually; Coverage Options Associates a.k.a. Kentucky Hospital Service Company, A Kentucky Limited Liability Company; Kentucky Hospital Association, A Kentucky Corporation; and Richard Stocks, individually, Defendants Below, Appellees.**

No. 34702.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2009.

Decided Sept. 24, 2009.

Perry W. Oxley, Dinsmore & Shohl, LLP, Charleston, WV, and Scott W. Andrews, Offutt Nord, PLLC, Huntington, WV, for the Appellant.

Greg E. Mitchell, Frost Brown Todd, Lexington, KY, for the Appellee, Kentucky Hospital Association.

Lonnie C. Simmons, Joshua I. Barrett, DiTrapano, Barrett & DiPiero, Charleston, WV, for the Appellees, Virginia Insurance Reciprocal and the Reciprocal Group, Inc.; Lisa Hyman; and Coverage Options Associates (Kentucky Hospital Service Company).

Jeffrey M. Wakefield, Jaclyn A. Bryk, Elizabeth L. Taylor, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for the Appellee, Mr. Stocks.

DAVIS, Justice.

Lloyd Michael Noland, the appellant herein and plaintiff below (hereinafter referred to as "Mr. Noland"), appeals from an order of the Circuit Court of Raleigh County granting partial summary judgment in favor of the appellee herein and defendant below, Virginia Insurance Reciprocal (hereinafter referred to as "VIR"),[1] and dismissing the claims Mr. Noland brought against the remaining appellees herein and defendants below, Richard Stocks; Lisa Hyman; Coverage

---

1. VIR has indicated in its brief that it now goes by the name Reciprocal of America. We, however, er, will use the name cited in the caption of the case.

Options Associates; and Kentucky Hospital Association (hereinafter referred to as "Mr. Stocks", "Ms. Hyman", "COA" and "KHA").[2] In this appeal, Mr. Noland contends that the trial court committed error in concluding that VIR had no duty to defend him in another action after a certain date and in ruling that the statute of limitations barred his claims against the other four defendants.[3] After careful review of the parties' briefs and the record submitted on appeal, and having heard the arguments of the parties, we reverse the circuit court's partial summary judgment in favor of VIR. However, we affirm the dismissal of the claims against Mr. Stocks, Ms. Hyman, COA and KHA.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case has its origins in a medical malpractice lawsuit that was brought in 1998 by Ireland and Charlene Noel against Beckley Appalachian Regional Hospital (hereinafter referred to as "BARH").[4] The Noels filed their action in the Circuit Court of Kanawha County. The Noels' lawsuit was filed against BARH as a result of severe injuries Mr. Noel sustained while being treated by BARH.[5] The action against BARH was covered by both primary and umbrella insurance policies issued by VIR. Consequently, VIR provided counsel for BARH.

After the lawsuit against BARH was filed, BARH filed a third-party complaint against its employee, Mr. Noland, on May 24, 2000.[6] The third-party complaint alleged that, as a result of Mr. Noland's negligent treatment of Mr. Noel, Mr. Noland was liable to BARH for a percentage of any fault that was attributed to BARH in the action brought by the Noels.[7] Although Mr. Noland was an insured under the policy VIR had issued to BARH, VIR wrote a letter to Mr. Noland on October 23, 2000, denying coverage, and further denying a duty to defend him in the third-party action.[8]

Subsequent to BARH's third-party complaint being filed, the Noels were granted leave to file an amended complaint to assert a bad faith claim against BARH's insurer, VIR.[9] On August 1, 2000, the Noels agreed to settle their claims against BARH and VIR for $2.5 million.[10]

On July 25, 2001, Mr. Noland filed an action against VIR in the Raleigh County Circuit Court.[11] Mr. Noland's complaint set out five counts against VIR that are summarized as follows: (1) VIR had a duty to defend and indemnify Mr. Noland under its primary policy from May 24, 2000, through

2. A joint brief was filed on behalf of VIR, Ms. Hyman, COA and KHA. Mr. Stocks filed a separate brief.

3. As pointed out in Section III of this opinion, the trial court also relied upon other grounds for dismissing the action against Mr. Stocks, Ms. Hyman, COA and KHA. However, we have chosen to resolve the dismissal of those defendants on statute of limitations grounds only.

4. The Noels also sued Charleston Area Medical Center (hereinafter referred to "CAMC"). CAMC settled the claim asserted against it by the Noels.

5. The record indicates that Mr. Noel was rendered a quadriplegic as a result of the medical malpractice.

6. At the time of the third-party complaint, Mr. Noland was employed by BARH as a registered nurse.

7. BARH was later granted leave to amend its third-party complaint to assert a bad faith claim against Mr. Noland's personal liability insurer,

ACE American Insurance Company (hereinafter referred to as "ACE American").

8. As a result of VIR's refusal to defend Mr. Noland in the third-party action, Mr. Noland's personal liability insurer, ACE American, provided counsel to represent him.

9. The Noels were allowed to add an additional claim against Mr. Noland's personal liability insurer, ACE American. The record does not contain the ultimate disposition of the Noels' claim against ACE American.

10. The settlement was actually executed on September 14, 2000, and was approved by the circuit court on October 6, 2000. The record does not indicate what portion of the settlement went toward the bad faith claim the Noels asserted against VIR.

11. Around the same time, Mr. Noland filed a similar action against VIR in the United States District Court for the Southern District of West Virginia. The federal action was dismissed for lack of jurisdiction on October 26, 2001.

August 1, 2000; (2) VIR had a duty to defend and indemnify Mr. Noland under its primary policy after August 1, 2000; (3) VIR had a duty to defend and indemnify Mr. Noland under its umbrella policy after August 1, 2000; (4) VIR breached its common law duty of good faith and fair dealing in refusing to defend and indemnify Mr. Noland under the primary and umbrella policies; and (5) VIR violated the West Virginia Unfair Trade Practices Act in refusing to defend and indemnify Mr. Noland under both the primary and umbrella policies.[12]

On August 9, 2001, BARH was permitted to amend its third-party Kanawha County Circuit Court complaint to allow its insurer, VIR, to enter the case as the real party in interest. In the amended third-party complaint, VIR sought declaratory judgment relief to determine whether it owed Mr. Noland a duty to defend against BARH's third-party complaint; VIR also set out a bad faith claim against Mr. Noland's personal liability insurer, ACE American.

On February 8, 2002, the Kanawha County Circuit Court consolidated VIR's declaratory judgment claim against Mr. Noland with Mr. Noland's claims against VIR and transferred the consolidated matters to the Raleigh County Circuit Court.[13] Subsequent to the consolidation, VIR and Mr. Noland filed mo-

tions for summary judgment on the duty to defend issue. On July 25, 2003, the circuit court entered a partial summary judgment order finding that VIR owed Mr. Noland a duty to defend against BARH's third-party complaint during the period from May 24, 2000, the date the third-party complaint was filed, until August 1, 2000, the date the Noels agreed to settle their claims against BARH and VIR. The circuit court's order also found that VIR had no duty to defend Mr. Noland after August 1, 2000. Mr. Noland thereafter filed a motion for reconsideration of the adverse partial summary judgment ruling.[14]

While the motion for reconsideration was pending, the circuit court entered an order on August 25, 2005, granting Mr. Noland leave to amend his complaint to assert statutory and common law bad faith claims against Mr. Stocks, Ms. Hyman, COA and KHA.[15] The four defendants filed motions to dismiss. On December 8, 2006, the circuit court entered an order granting Mr. Stocks' motion to dismiss. On December 20, 2006, the circuit court entered an order granting Ms. Hyman's motion to dismiss. On March 12, 2007, the circuit court entered an order granting the motion to dismiss filed by COA and KHA.

Pursuant to motions filed by Mr. Noland asking the circuit court to render its previous

---

12. Mr. Noland also sought punitive damages.

13. The Kanawha County Circuit Court maintained jurisdiction over BARH's third-party contribution claim against Mr. Noland and VIR's bad faith action against ACE American.

14. We have previously indicated that a motion for reconsideration has no legal basis with respect to asking a trial court to revisit a final judgment order. *See Moten v. Stump*, 220 W.Va. 652, 656 n. 5, 648 S.E.2d 639, 643 n. 5 (2007) ("We must once again reiterate that the West Virginia Rules of Civil Procedure do not recognize a 'motion for reconsideration.'"). However, Mr. Noland's "motion for reconsideration 'should [be] viewed as a routine request for reconsideration of an interlocutory ... decision.... Such requests do not necessarily fall within any specific ... [r]ule. They rely on "the inherent power of the rendering ... court to afford such relief from interlocutory judgments ... as justice requires."'" *State ex rel. Crafton v. Burnside*, 207 W.Va. 74, 77, 528 S.E.2d 768, 771 (2000), (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir.1985)).

Further, Rule 54(b) of the West Virginia Rules of Civil Procedure provides that "any order ... which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ... and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims[.]" *See also* Syl. pt. 3, *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003) ("An otherwise interlocutory order that is not expressly certified as final by using the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure remains interlocutory so long as the affected party does not seek an appeal. Consequently, when a party seeks to have a circuit court reconsider its ruling on such an order prior to entry of a final judgment disposing of the entire case, the interlocutory order should not be reviewed under Rule 60(b) of the West Virginia Rules of Civil Procedure.").

15. Mr. Stocks was employed as an officer with VIR, and the other three defendants acted as adjusters in the denial of Mr. Noland's efforts to have VIR defend him against BARH's third-party claim.

orders final and appealable under Rule 54(b) of the West Virginia Rules of Civil Procedure, the circuit court entered an order on March 28, 2008, that certified as final and appealable its partial summary judgment order in favor of VIR as well as its orders dismissing the claims against Ms. Hyman, COA and KHA. On August 21, 2008, the circuit court issued an order certifying as final and appealable its order dismissing the claims against Mr. Stocks.[16] It is from these rulings that Mr. Noland appeals to this Court.

## II.

### STANDARD OF REVIEW

■ In this proceeding, the circuit court entered an order granting partial summary judgment in favor of VIR, and entered orders dismissing the claims against Mr. Stocks, Ms. Hyman, COA and KHA pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. With respect to the partial summary judgment order, this Court has made clear that "[a]ppellate review of a partial summary judgment order is the same as that of a summary judgment order, which is de novo." Syl. pt. 1, *West Virginia Dep't of Transp., Div. of Highways v. Robertson*, 217 W.Va. 497, 618 S.E.2d 506 (2005). We have indicated that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ Our standard of review of the Rule 12(b)(6) dismissal orders provides that the "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). We also have held, in Syllabus point 3 of *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977), that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

16. This Court has grave concerns with the long delay before Mr. Noland requested the circuit court to enter a Rule 54(b) order finding the prior interlocutory orders appealable. The circuit court's Rule 54(b) certification orders of March 28, 2008, and August 21, 2008, involved orders that were entered on July 25, 2003; December 8, 2006; December 20, 2006; and March 12, 2007. We recognize that the circuit court's authority to certify those orders as appealable at such a late date is due to the fact that Rule 54(b) does not set out a time limit for making a certification request. *See* W. Va. R. Civ. P. Rule 54(b) ("When more than one claim for relief is presented in an action . . . , or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . ."). Even so, we do not believe that the long pre-certification delay in this case should be taken as something this Court endorses. The federal counterpart to our rule, Rule 54(b) of the Federal Rules of Civil Procedure, also does not contain a time limit for seeking certification. However, at least one federal circuit court of appeals has placed a time limit on certification of an order under federal Rule 54(b). *See Schaeffer v. First Nat'l Bank of Lincolnwood*, 465 F.2d 234, 236 (7th Cir.1972) ("[A]s a general rule it is an abuse of discretion for a district judge to grant a motion for a federal Rule 54(b) order when the motion is filed more than thirty days after the entry of the adjudication to which it relates."). Some federal courts look at the timeliness of a Rule 54(b) motion as a factor to consider in deciding whether to grant the motion. *See Miami Tribe of Oklahoma v. United States*, No. 03–2220–DJW, 2006 WL 3848949, at *4 (D.Kan. Dec.29, 2006) ("Defendants' Motion for Rule 54(b) Judgment, filed ten months after the entry of the adjudication to which it relates, is too long of a delay and further justifies denial of the motion."); *Bank of New York v. Hoyt*, 108 F.R.D. 184, 186 (D.R.I.1985) ("In the absence of a fixed time limit for taking action [under Rule 54(b)], it seems prudent for the court to assess the timeliness of such an initiative on a case-by-case basis."). At least one state court, though, has rejected the *Schaeffer* limitations outright. *See Williams v. City of N. Las Vegas*, 91 Nev. 622, 541 P.2d 652, 654 (1975) ("In the interest of preserving, when justice requires, a litigant's right to his 'day in court,' we would not set a specific period of time within which one must seek a Rule 54(b) order or lose his right to an interlocutory appeal. In most instances, no abuse of discretion will be attributed to the trial court in granting a Rule 54(b) motion so long as there is a substantial factual basis for granting the motion and no significant prejudice to adverse parties is shown.").

support of his claim which would entitle him to relief."

With the above standards in mind, we review the merits of the issues presented.

## III.

## DISCUSSION

### A. VIR Had a Duty to Defend Mr. Noland after August 1, 2000

The circuit court's partial summary judgment order, involving the duty-to-defend issue, made two dispositive rulings. First, the order concluded that VIR did, in fact, have a duty to defend Mr. Noland from the date BARH filed its third-party complaint, on May 24, 2000, until August 1, 2000, which was the date the Noels agreed to settle their claims against BARH and VIR. This ruling represented partial summary judgment in favor of Mr. Noland.

■ It is important to understand that the partial summary judgment in favor of Mr. Noland *has not* been challenged by VIR. That is, VIR did not set out in its brief, as a cross assignment of error, the trial court's determination that it had a duty to defend Mr. Noland from May 24, 2000, to August 1, 2000.[17] As a consequence of VIR's failure to challenge that finding in this appeal, any error in that ruling has been waived for purposes of this appeal. *See Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)).[18] More importantly, "[w]e treat this ruling as the law of the case since [VIR] did not challenge it on appeal."

*Clifton v. Clifton Cable Contracting, L.L.C.*, 54 Va.App. 532, 680 S.E.2d 348, 351 n. 1 (2009). *See also Dunlap v. Dunlap*, 131 P.3d 471, 475–76 (Alaska 2006) ("Although our doctrine of law of the case generally refers to issues that have previously been reviewed at the appellate level, the doctrine is equally applicable to issues that have been fully litigated in the superior court and as to which no timely appeal has been made."); *American Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 548 (Ky.2008) ("That ruling [on the issue of applicability of a contract provision] is now the law of the case because Kestel did not file a cross-motion for discretionary review in this Court of the adverse ruling [below]."); *Lee Acquisition Fund, L.P. v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470, 472 (1997) ("[An] unappealed ruling is the law of the case[.]").

The second dispositive ruling made by the circuit court was that VIR's duty to defend Mr. Noland terminated after the August 1, 2000, settlement, and thus that Mr. Noland's personal insurer, ACE American, had a duty to defend him after that date.[19] It is this issue which we have been called upon to review. To resolve the issue of whether VIR owed Mr. Noland a duty to defend after August 1, 2000, we must examine the relevant language of the policies involved.

■ We begin by observing relevant legal principles applicable to the interpretation of the language of an insurance policy. This Court has held that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be re-

17. Rule 10(f) of the West Virginia Rules of Appellate Procedure "specifically allows an appellee to file a cross assignment, notwithstanding the fact that the appellee did not file a separate petition for appeal[.]" *Stafford v. Rocky Hollow Coal Co.*, 198 W.Va. 593, 596 n. 4, 482 S.E.2d 210, 213 n. 4 (1996).

18. It will be noted that VIR made several arguments, at the circuit court level, as to why it had no duty to defend Mr. Noland during the period from May 24, 2000, to August 1, 2000.

19. Mr. Noland argued below that ACE American was not a party to the instant duty to defend

issue. Therefore, the circuit court could not litigate ACE American's rights and duties. We agree with Mr. Noland; however, for purposes of this appeal, we will address matters pertaining to the policy issued by ACE American, without ruling upon its rights and duties under that policy. *See* Syl. pt. 2, *State ex rel. Bd. of Educ. of County of Putnam v. Beane*, 224 W.Va. 31, 680 S.E.2d 46 (2009) (" 'The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard.' Syllabus Point 2, *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937).").

viewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). *See also* Syl. pt. 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002) ("Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law."). We have also made clear that the "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). Further, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970). However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. pt. 1, *Prete v. Merchants Prop. Ins. Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976). Finally, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998).

VIR issued a primary policy to BARH that provided $1 million in coverage as well as an umbrella or excess policy that provided $5 million in coverage. The language of the primary insurance policy that was relied upon by the circuit court in resolving the issue of VIR's duty to defend after the settlement is as follows:

Our right and duty ends when we have exhausted the applicable limit of liability stated in Section III of the Declarations in the payment of judgments or settlements under this policy.

The language of the umbrella policy that was relied upon by the circuit court is as follows:

This coverage is subject to the same terms, conditions, exclusions and limitations as the primary insurance except with respect to any provisions to the contrary contained in this contract.

■ The circuit court determined that the above language in the policies was unambiguous. The circuit court found that because the primary policy was exhausted when VIR paid the policy limit of $1 million to the Noels, VIR's duty to defend Mr. Noland under the primary policy terminated. The circuit court further found that, insofar as there was no longer any duty to defend under the primary policy because of exhaustion, the umbrella policy could not be invoked because it was subject to the same terms, conditions, exclusions and limitations as the primary policy. We agree with the circuit court that the above language from the policies is not ambiguous. We disagree as to how the circuit court applied the policies' language.[20]

■ Although the Noels' action against BARH and BARH's action against Mr. Noland represented two causes of action, the two causes of action represented only one claim for purposes of the primary and umbrella policies. That is, to resolve both causes of action, VIR was obligated to pay not more than $6 million ($1 million under the primary policy and $5 million under the umbrella policy). The circuit court concluded that because VIR paid $1 million to the Noels under the primary policy, nothing was left to pay a potential award against Mr. Noland under the primary policy. Consequently, VIR had no duty to continue to defend Mr. Noland because the umbrella pol-

---

**20.** In this appeal, Mr. Noland contends that the "exhaustion" provision of the primary policy is ambiguous as to multiple insureds because it "does not specify which insureds will enjoy the protection of the duty to defend and which insureds will be left without coverage and/or a defense." Insofar as we resolve the issue of duty to defend under the umbrella policy, we need not determine whether the "exhaustion" provision is ambiguous in the narrow context argued by Mr. Noland.

icy was not triggered until payment was first made under the primary policy. The circuit court's reasoning is flawed. It allowed BARH to tap into the umbrella policy to pay the remaining settlement amount of $1.5 million, but precluded Mr. Noland from having access to the remaining $3.5 million under the umbrella policy which would then give rise to VIR's duty to defend Mr. Noland against BARH's cause of action.[21] We have found no language in the primary policy nor the umbrella policy which extinguished VIR's duty to continue defending Mr. Noland under the funds remaining in the umbrella policy. In fact, the very purpose of the umbrella policy was to provide coverage *once the primary policy limits had been exhausted.* It is generally recognized that "[a] primary policy imposes on an insurer a 'primary duty of defense' while an ... 'umbrella' policy attaches only after primary coverage has been exhausted." *Padilla Constr. Co., Inc. v. Transportation Ins. Co.,* 150 Cal.App.4th 984, 58 Cal.Rptr.3d 807, 821 (2007). *See also U.S. Fire Ins. Co. v. Worcester Ins. Co.,* 62 Mass.App.Ct. 799, 821 N.E.2d 91 (2005) (finding that once primary policy had been exhausted, insurer under umbrella policy had duty to defend insured).

Further, as is argued by Mr. Noland, the umbrella policy expressly provided coverage and a duty to defend to him. The umbrella policy stated in relevant part:

> If the limits of liability of the primary insurance have been exhausted by payment of claims ... we shall defend any claim or suit brought against any insured covered for damages under this policy.

Insofar as there is no dispute that Mr. Noland was a covered insured under the umbrella policy, that policy unambiguously provides that it will defend Mr. Noland if the limits of the primary policy are exhausted. That is exactly what occurred in this case.

 VIR argued at the trial court level and before this Court that the "other insurance" provision of its umbrella policy precluded coverage because Mr. Noland had coverage with ACE American. However, the circuit court did not rely on this argument in making its decision. Therefore, we reject it here for the following reasons.

The umbrella policy issued by VIR contained the following "other insurance" clause:

> If other insurance or self-insurance applies to claims not covered by this policy, coverage provided by this policy is excess and we will not make any payments until the other insurance is used up.

VIR contends that because Mr. Noland had other insurance with ACE American, the umbrella policy could not be triggered until the liability limits under the ACE American policy were exhausted. This argument is also flawed. The ACE American policy also had an "other insurance" clause which stated:

> If there is other insurance which applies to the loss resulting from your professional services, the other insurance must pay first. It is the intent of this policy to apply the amount of loss which is more than ... [t]he limits of liability of the other insurance[.] [22]

(Footnote added).

Most courts addressing the issue have found that "[w]hen two insurance policies cover the same risk and each contains an [other insurance] clause, the clauses are considered mutually repugnant and are disregarded. Once disregarded, the general coverage of each policy applies and the insurers are obligated to share the loss." *Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co.,* 753 F.2d 1288, 1290 (4th Cir.1985). This result is reached because " 'other insurance' clauses cannot be permitted to operate to produce a total forfeiture of coverage." *Schoenecker v. Haines,* 88 Wis.2d 665, 277 N.W.2d 782, 785 (1979). *Accord National Sur. Corp. v. Ranger Ins. Co.,* 260 F.3d 881, 885 (8th Cir.2001); *Methodist Healthcare v. American Int'l Specialty Line Ins. Co.,* 310

---

**21.** In order for the circuit court's reasoning to be consistent, neither BARH nor Mr. Noland could tap into the funds available under the umbrella policy once the $1 million policy limit had been paid from the primary policy.

**22.** The circuit court erroneously held that because there was no coverage under VIR's primary and umbrella policies, ACE American could not invoke the "other insurance" clause of its policy to deny its duty to defend Mr. Noland after August 1, 2000.

F.Supp.2d 976, 979 (W.D.Tenn.2004); *Fireman's Fund Ins. Co. v. Empire Fire & Marine Ins. Co.*, 155 F.Supp.2d 429, 434 (E.D.Pa.2001). *See also W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 407 N.J.Super. 177, 970 A.2d 382, 396 (2009); ("[W]here the two policies in question each have an other-insurance clause stating that it is excess over any other policy, the provisions are 'mutually repugnant,' and are disregarded."); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296, 311 (1998); (same); *Travelers Ins. Co. v. Lexington Ins. Co.*, 478 So.2d 363, 365 (Fla. Dist.Ct.App.1985) (same); *Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 99 Md. App. 595, 638 A.2d 1220, 1224 (1994) (same); *Titan Indem. Co. v. American Justice Ins. Reciprocal*, 758 So.2d 1037, 1040 (Miss.Ct. App.2000) (same); *Wentzville Park Assocs., L.P. v. American Cas. Ins. Co. of Reading*, 263 S.W.3d 736, 740 (Mo.Ct.App.2008) (same); *Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 685 N.Y.S.2d 411, 414, 708 N.E.2d 167 (1999) (same).

Insofar as ACE American is not a party to this litigation, we are without jurisdiction to hold as a matter of law that it has a duty to share in the defense of Mr. Noland.[23] However, VIR is a party to this litigation, and, as such, we conclude that the "other insurance" clause in its umbrella policy cannot be invoked to preclude its defense of Mr. Noland after August 1, 2000. Consequently, the circuit court committed error by concluding that VIR had no duty to defend Mr. Noland after August 1, 2000.

### B. Dismissal of Claims on Statute of Limitations Grounds

Mr. Noland also has asserted unfair settlement practices[24] or statutory bad faith claims[25] and common law bad faith claims against Mr. Stocks, Ms. Hyman, COA and KHA.[26] The circuit court dismissed Mr. Noland's statutory bad faith claims against Mr. Stocks, Ms. Hyman, COA and KHA on statute of limitations grounds.[27] Although the circuit court dismissed Mr. Noland's common law bad faith claim against COA and KHA on statute of limitations grounds, it dismissed the common law bad faith claim against Mr. Stocks and Ms. Hyman on the grounds that no contractual relationship existed between the parties.[28] Insofar as the common law bad faith statute of limitations issue is applicable to all four defendants, we will also address the dismissal of the common law bad

**23.** We previously have indicated in this opinion that VIR intervened in BARH's third-party action against Mr. Noland in order to assert a bad faith claim against ACE American. The issue of ACE American's rights and duties in relation to BARH's third-party complaint against Mr. Noland should be determined in VIR's litigation against ACE American. VIR's brief indicated that its action against ACE American also was transferred to the Raleigh County Circuit Court.

**24.** *See* West Virginia Unfair Trade Practices Act, W. Va.Code § 33–11–4(9) (2002) (Repl. Vol. 2006).

**25.** *See Light v. Allstate Ins. Co.*, 203 W.Va. 27, 31 n. 5, 506 S.E.2d 64, 68 n. 5 (1998) ("The phrase 'bad faith' is used to refer to the state's 'unfair settlement practices' statute. However, there is actually a technical distinction between a 'bad faith' claim and an 'unfair settlement practices' claim. The phrase 'bad faith' was developed to describe the common law action against an insurer. The phrase 'unfair settlement practices' was developed to describe the statutory action against an insurer. Because the statutory claim actually includes the elements of a cause of action for the common law claim, our cases use the two phrases interchangeably.").

**26.** A common law bad faith cause of action was first recognized in *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986), wherein this Court held that there was a common law duty of good faith and fair dealing running from an insurer to its insured.

**27.** The trial court's order regarding COA and KHA did not expressly analyze the statutory bad faith claim. The claim was disposed of implicitly based upon the circuit court's prior rulings contained in the orders dismissing the claim against Mr. Stocks and Ms. Hyman. Mr. Noland's brief has not argued otherwise.

**28.** We make no ruling on the propriety of the circuit court's dismissal of the common law bad faith claim against Mr. Stocks and Ms. Hyman on the grounds that no contractual relationship existed between the parties. We will note, however, that in Syllabus point 1 of *Taylor v. Nationwide Mutual Insurance Co.*, 214 W.Va. 324, 589 S.E.2d 55 (2003), this Court held that "[a] cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company personally liable for violations of the West Virginia Unfair Trade Practices Act, W. Va.Code §§ 33–11–1 to –10."

faith claim against Mr. Stocks and Ms. Hyman in the context of the statute of limitations. *See Hoover v. Moran*, 222 W.Va. 112, 119, 662 S.E.2d 711, 718 (2008) ("[O]ur cases have made clear that 'it is permissible for us to affirm the granting of [dismissal] on bases different or grounds other than those relied upon by the circuit court.' " (quoting *Gentry v. Mangum*, 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995))); *U.S. Steel Mining Co., LLC v. Helton*, 219 W.Va. 1, 3 n. 3, 631 S.E.2d 559, 561 n. 3 (2005) ("*De novo* review on appeal means that the result and not the language used in or reasoning of the lower tribunal's decision, is at issue. A reviewing court may affirm a lower tribunal's decision on any grounds."); *Yourtee v. Hubbard*, 196 W.Va. 683, 690 n. 9, 474 S.E.2d 613, 620 n. 9 (1996) ("[W]e are not confined to affirming the judgment strictly on the grounds given by the lower court. In reviewing an appeal of a circuit court's order, we look not to the correctness of the legal ground upon which the circuit court based its order, but rather, to whether the order itself is correct, and we will uphold the judgment if there is another valid legal ground to sustain it.").

Before we address the circuit court's dismissal of the statutory and common law bad faith claims, we first must determine the issue of what statute of limitations applies to those claims.

**1. Statute of limitations for statutory and common law bad faith claims.** This Court previously has held that a one year statute of limitations applies to a statutory bad faith claim. *See* Syl. pt. 1, *Wilt v. State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 506 S.E.2d 608 (1998) ("Claims involving unfair settlement practices that arise under the Unfair Trade Practices Act, West Virginia Code § 33–11–1 to –10 (1996 & Supp.1997), are governed by the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c) (1994)."). Although the circuit court and the parties assumed that a one year statute of limitations applies to a common law bad faith claim, this Court has never expressly determined what statute of limitations period covers a common law bad faith claim. However, we were asked in *Sizemore*

*v. State Farm General Insurance Co.*, 202 W.Va. 591, 505 S.E.2d 654 (1998), whether the one year statute of limitations contained in W. Va.Code § 55–2–12(c) (1959) (Repl. Vol. 2008) was applicable to a common law bad faith claim.

The *Sizemore* case came to this Court based upon certified questions from the Circuit Court of Mercer County. Two of the certified questions were formulated as follows: [29]

[1] Is the plaintiffs' claim for extra-contractual damages under a theory of common law bad faith, arising from the investigation and denial of their fire loss property insurance claim, also barred by the one year limitation of action provision contained in their State Farm mobile home policy where plaintiffs failed to institute an action on the policy within one year after both plaintiffs and their attorneys received written notification of denial of coverage by State Farm General Insurance Company?

[2] Alternatively, is the plaintiffs' claim for extra-contractual damages under a theory of common law bad faith, arising from State Farm's investigation and denial of their fire loss property insurance claim, barred by the one year statutory limitation of action provision [W. Va.Code § 55–2–12(c) ], where plaintiffs failed to institute an action on the policy within one year after both plaintiffs and their attorneys received written notification of denial of coverage by State Farm General Insurance Company?

*Sizemore*, 202 W.Va. at 592–93, 505 S.E.2d at 655–56. We answered the first question in the affirmative because a statute existed which permitted the insurer to limit the time in which to bring an action. As a result of our resolution of the first question, we found "it unnecessary to determine whether the plaintiffs' claim for extra-contractual damages under a theory of common law bad faith is barred by the one year statutory limitation of action provision in W. Va.Code § 55–2–12(c)." *Sizemore*, 202 W.Va. at 599, 505

---

**29.** Four questions were certified in *Sizemore;* but, only two are relevant to this case.

S.E.2d at 662. The question left unresolved in *Sizemore* must be resolved in this case.

The prior decisions of this Court have clearly indicated that a common law bad faith claim sounds in tort. *See* Syl. pt. 2, *Hawkins v. Ford Motor Co.*, 211 W.Va. 487, 566 S.E.2d 624 (2002) ("The Unfair Trade Practices Act, W. Va.Code §§ 33–11–1 to 10, and *the tort of bad faith* apply only to those persons or entities and their agents who are engaged in the business of insurance." (emphasis added)).[30] The statute of limitations that governs a tort action is contained in W. Va.Code § 55–2–12 (1959) (Repl. Vol. 2008). *See Wilt v. State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 167, 506 S.E.2d 608, 610 (1998) ("Both parties agree that West Virginia Code § 55–2–12 is the statute that governs tort actions."). This statute provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued; if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

We previously have examined W. Va.Code § 55–2–12 and held that, "unless a tort expressly falls within the classification of property damage, personal injury, or fraud or deceit, a one-year statute of limitations governs rather than a two-year period." *Wilt v.*

*State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 170, 506 S.E.2d 608, 613 (1998).

In *Wilt*, we determined that a statutory bad faith action *did not* involve property damage, personal injury, or fraud or deceit; therefore, the one year statute of limitations under W. Va.Code § 55–2–12(c) applied to such a cause of action.[31] We reached this conclusion as follows:

Plaintiffs argue that an unfair settlement claim is analogous to a claim for fraud, which is subject to a two-year statute of limitations. Viewing claims under the Act as necessarily fraudulent in nature is problematic, however, because the type of conduct that constitutes an unfair settlement claim may include a variety of factual scenarios which lack the requisite elements of a fraud claim.

In considering whether an unfair settlement practices claim can be viewed as a personal injury and thereby fall within the two-year statute of limitations provided by West Virginia Code § 55–2–12(b), we first recognize that the term "personal injury" historically has referred to physical injuries to the person such as an automobile accident, slip and fall, etc.... [E]very claim which qualifies as a tort cannot necessarily be classified as a personal injury.

Numerous torts such as libel, defamation, false arrest, false imprisonment, and malicious prosecution take the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c). These torts, which do not fall within the realm of personal injury, are controlled by subsection (c) because they do not survive the death of a party....

---

**30.** A majority of the courts that have addressed the issue have held that a common law bad faith action sounds in tort. *See State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1155 (Alaska 1989) (recognizing common law bad faith action against an insurer as a tort); *Noble v. National Amn. Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 486, 510 P.2d 1032 (1973); *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984); *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334, 346 (1996); *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014, 1018 (1986); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988); *Sizemore v. Continental Cas. Co.*, 142 P.3d 47, 54

(Okla.2006); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 52 (Tex.1997); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 374 (1978). *But see Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445, 452 (1993) (recognizing common law bad faith action against an insurer as a contract claim).

**31.** *Wilt* was presented to this Court as a certified question from the United States District Court for the Northern District of West Virginia. The question certified asked this Court to determine which statute of limitations applied to a statutory bad faith claim.

Only through express statutory designation do fraud and deceit survive the death of the victim and thereby take a two-year statute of limitations. All other torts, those that did not survive at common law and those that are not extended survivability by statute, take a one-year limitations period under the language of West Virginia Code § 55–2–12(c).

. . . .

Accordingly, we determine that claims involving unfair settlement practices that arise under the Unfair Trade Practices Act are governed by the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c).

*Wilt*, 203 W.Va. at 167–71, 506 S.E.2d at 610–14 (citations omitted).

▆▆ Based upon the reasoning employed in *Wilt*, we find that a common law bad faith action does not involve property damage, personal injury, or fraud or deceit. Therefore, we expressly hold that the one year statute of limitations contained in W. Va. Code § 55–2–12(c) (1959) (Repl. Vol. 2008) applies to a common law bad faith claim.

**2. Date upon which the statute of limitations begins to run in first-party bad faith claims.** Mr. Noland contends that the statutory and common law bad faith claims were timely brought pursuant to this Court's decision in *Klettner v. State Farm Mutual Automobile Insurance Co.*, 205 W.Va. 587, 519 S.E.2d 870 (1999). In Syllabus point 7 of *Klettner*, this Court held: "[t]he one-year statute of limitations which applies to claims of unfair settlement practices . . . does not begin to run until the appeal period has expired on the underlying cause of action upon which the . . . claim is predicated." Mr. Noland contends that, under *Klettner*, his statutory and common law bad faith actions were timely filed against Mr. Stocks, Ms. Hyman, COA and KHA as the underlying action, BARH's third-party complaint against him, was pending when he filed the amended complaint.[32] The circuit court ruled that *Klettner* was applicable only to third-party bad faith claims.[33] Consequently, insofar as Mr. Noland was prosecuting first-party bad faith claims, the circuit court held that the statute of limitations began to run from the date VIR denied coverage.

Although *Klettner* was a third-party bad faith action, the Court did not expressly limit its ruling on the issue of the running of the statute of limitations to third-party bad faith actions.[34] However, the rationale relied upon in *Klettner* in addressing the issue of the running of the statute of limitations was based upon four of our cases that involved third-party bad faith actions.

*Klettner* came to this Court as a certified question from the United States District Court for the Northern District of West Virginia. The question certified to the Court was as follows:

Whether the one-year statute of limitations for alleged unfair claim settlement practices under W. Va.Code § 33–11–4(9) is tolled until the appeals period has run

---

**32.** VIR's brief indicates that the Circuit Court of Kanawha County entered an order on October 22, 2007, finding that BARH could not maintain its action against Mr. Noland.

**33.** "[P]ursuant to W. Va.Code § 33–11–4a (2005) [Repl. Vol. 2006], the Legislature abolished a third-party bad faith cause of action against insurers." *State ex rel. Nationwide Mut. Ins. Co. v. Kaufman*, 222 W.Va. 37, 44 n. 8, 658 S.E.2d 728, 735 n. 8 (2008). Further, this Court has held that a third-party common law bad faith action against an insurer is not recognized in this State. *See* Syl., *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 504 S.E.2d 893 (1998) ("A third party has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty.").

**34.** We differentiated between "first-party" and "third-party" bad faith actions in *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998), as follows:

[A] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor. In the bad faith action against the insurance company the third-party alleges the insurer insurance company engaged in bad faith settlement in the first action against the insured tortfeasor.

*Gaughan*, 203 W.Va. at 369–70, 508 S.E.2d at 86–87.

and/or all appeals in the underlying tort litigation have been exhausted?

*Klettner,* 205 W.Va. at 590, 519 S.E.2d at 873. In answering the certified question, this Court initially examined the decision in *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), *overruled in part by State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994). *Klettner* stated,

> [i]n syllabus point two of [*Jenkins* ], we held that "[a]n implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va.Code, 33–11–4(9); but such implied private cause of action cannot be maintained until the underlying suit is resolved."

*Klettner,* 205 W.Va. at 590, 519 S.E.2d at 873.

The second decision examined by *Klettner* was *Robinson v. Continental Casualty Co.,* 185 W.Va. 244, 406 S.E.2d 470 (1991), *overruled in part by State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994). *Klettner* stated as follows: "[w]e held in syllabus point two of *Robinson* that '[a]n action for bad faith failure to settle a claim under W. Va.Code, 33–11–1 [1974], *et seq.,* and the commencement of formal discovery in that action, are premature when the appellate process has not yet been completed in the underlying action.'" *Klettner,* 205 W.Va. at 591, 519 S.E.2d at 874. The third case *Klettner* reviewed was *Poling v. Motorists Mutual Insurance Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994). *Klettner* observed that "[w]e held in syllabus point one [of *Poling* ] that '[a] settlement of an underlying claim in a bad faith practices case against an insurance carrier is an ultimate resolution of a cause of action within the meaning of *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981).'" *Klettner,* 205 W.Va. at 592, 519 S.E.2d at 875.

The fourth and final decision *Klettner* examined was our opinion in *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994). *Klettner* acknowledged that this Court held in Syllabus point two of *Madden* that,

> [u]nder rule 18(b), WVRCP [1998], as long as the claims against the insurer are

bifurcated from those against the insured, and any discovery or proceedings against the insurer are stayed pending resolution of the underlying claim between the plaintiff and the insured, there is no undue prejudicial impact on a jury of joining in an original pleading or amending a pleading to assert bad faith or unfair insurance practices counts against an insurer in an original action against [the] insured.

*Klettner,* 205 W.Va. at 592, 519 S.E.2d at 875. After thoroughly reviewing its four prior decisions, this Court reached the following conclusion in *Klettner:*

> After exhaustively reviewing the law in this area, we conclude that the one-year statute of limitations which applies to claims of unfair settlement practices brought pursuant to West Virginia Code § 33–11–4(9) does not begin to run until the appeal period has expired on the underlying cause of action upon which the statutory claim is predicated.

*Klettner,* 205 W.Va. at 593, 519 S.E.2d at 876. *Accord* Syl. pt. 7, *Klettner, id.*

The most instructive language in *Klettner* as to the limitations to be placed on its holding on the issue of the statute of limitations is contained in footnote 11 of the opinion, where we observed:

> In *Light v. Allstate Insurance Co.,* 203 W.Va. 27, 506 S.E.2d 64 (1998), we recently discussed the "clear distinction between a first-party and a third-party bad faith claim." *Id.* at 34, 506 S.E.2d at 71. Given the fact that an insurer is the named defendant in the bad faith claim as well as underlying tort action in a first-party action, we stated that the insurance mentioning concern that has historically been part of the basis for delaying third-party bad faith claims until the underlying claim is resolved does not come into play in a first-party claim. Because the instant case is a third-party claim, our discussion in *Light* concerning this distinction is of no relevance to the decision in this case.

*Klettner,* 205 W.Va. at 593 n. 11, 519 S.E.2d at 876 n. 11. It is clear to this Court that footnote 11 in *Klettner* was an implicit recognition that our holding in that case was

limited to third-party bad faith cases. Consequently, we must now decide whether *Klettner* should be extended to first-party bad faith actions.

We note that there is a clear split of authority on the issue of when the statute of limitations begins to run on a first-party bad faith claim predicated on a refusal to defend. A few courts find that the statute of limitations begins to run when an insurer denies coverage. *See Daugherty v. Allstate Ins. Co.*, 55 P.3d 224 (Colo.Ct.App.2002), *superseded by statute on other grounds as recognized in by Brodeur v. American Home Assurance Co.*, 169 P.3d 139 (Colo.2007); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033 (Pa.Super.Ct.1999). Other courts have held that the statute of limitations begins to run when a final judgment is rendered in the underlying case, or is tolled pending the outcome of the underlying action. *See Tibbs v. Great Amn. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir.1985); *Brannon v. Continental Cas. Co.*, 137 P.3d 280 (Alaska 2006); *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984); *Castle & Cooke, Inc. v. Great Amn. Ins. Co.*, 42 Wash.App. 508, 711 P.2d 1108 (1986). We will examine separately some of the cases that address the issue.

In *Daugherty v. Allstate Insurance Co.*, 55 P.3d 224 (Colo.Ct.App.2002), the insured notified his insurer that he injured two people in an automobile accident. The insurer informed the insured that the accident was not covered because the insured intentionally ran a red light which lead to the accident. Shortly thereafter, the injured parties filed an action against the insured. Default judgment was entered against the insured. Subsequently, the insured assigned to the injured parties his rights against the insurer for refusal to defend and indemnify. The injured parties then filed an action, in the name of the insured, against the insurer for breach of contract and bad faith. The trial court dismissed the action as barred by the running of the statute of limitations. The insured appealed.

The court of appeals in *Daugherty* addressed the statute of limitations issue for a cause of action for bad faith in two contexts: bad faith in refusing to defend and bad faith in refusing to indemnify. Those issues were addressed as follows:

The duty at issue in a bad faith breach of insurance contract claim is the insurance company's duty to act in good faith and deal fairly with its insured.... However, the insurance company is not called upon to perform this duty until some contractual duty imposed by the insurance policy has arisen. While the contractual duty and the duty to act in good faith are separate and distinct duties, they are related, and both must exist simultaneously to create a bad faith claim....

Here, plaintiff alleged that Allstate acted in bad faith by failing to perform two separate contractual promises: (1) unreasonably refusing to defend him and (2) unreasonably refusing to indemnify him. Because the contractual duty and the unreasonable conduct must exist simultaneously, we must examine the two allegations separately.

As noted above, Allstate's duty to defend plaintiff arose at the latest when he was named in the action filed by the Sauters. At that time, plaintiff knew the nature and extent of whatever injury he suffered as a result of the alleged bad faith conduct of Allstate in refusing to defend him. He also knew the cause of that injury, namely, Allstate's allegedly unreasonable refusal to defend him. Therefore, plaintiff's bad faith claim based on Allstate's duty to defend had to be filed within two years after the Sauters' case was filed in December 1996.[35] The claim was not filed until July 7, 2000, and therefore, the trial court correctly determined that this part of plaintiff's bad faith claim was barred by the statute of limitations.

Allstate's duty to indemnify arose, as explained above, when the Sauters obtained a judgment against plaintiff on July 9, 1998. At that time plaintiff knew the

---

**35.** This date was chosen because the insurer denied coverage prior to the action being filed against the insured.

nature and extent of whatever injuries he suffered as a result of Allstate's alleged bad faith conduct in refusing to indemnify him. He also knew that Allstate's allegedly unreasonable refusal to indemnify him was the cause of those injuries.

Plaintiff could not have asserted a bad faith claim based on failure to indemnify prior to the entry of the Sauters' judgment because before that time Allstate had no duty to indemnify him, and therefore, it could not have acted unreasonably in refusing to indemnify him. Thus, this part of plaintiff's bad faith claim had to be filed within two years following the entry of judgment against him on July 9, 1998. The claim was filed on July 7, 2000, and thus was timely.

Accordingly, plaintiff's claim for bad faith breach of insurance contract based on the duty to indemnify must be reinstated.

*Daugherty*, 55 P.3d at 228 (internal citations omitted) (footnote added).

In *Adamski v. Allstate Insurance Co.*, 738 A.2d 1033 (Pa.Super.Ct.1999), the insured assigned his cause of action against his insurer, for failure to defend and indemnify, to the plaintiff in the underlying suit. The plaintiff filed an action against the insurer alleging common law and statutory bad faith by the insurer for refusing to defend and indemnify the insured. The trial court dismissed the action on the grounds that the statute of limitations had run on the claims. The plaintiff appealed and argued that the claims were timely because the statute of limitations did not begin until the date on which the verdict was entered against the insured in the underlying action and because the insurer's continuous refusal to defend and indemnify amounted to a continuing tort. The appellate court disagreed: [36]

> [W]e reject appellants' claim that they were required to file suit only when the full extent of litigation damages was known and the need for indemnification arose. To the contrary, our Court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise

amount or extent of damages is determined. Instantly, the alleged harm to [the insured] occurred when appellee's position was made clear by the 1986 letter and appellee maintained that position by subsequently refusing to defend or indemnify [the insured]. As the aforementioned cases indicate, [the plaintiff] may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith.

> . . . .

> It is hornbook law that a statute of limitations begins to run as soon as the right to institute suit arises. This is true regardless of whether the full extent of harm is known when the action arises. Here, appellee's 1986 letter clearly put [the insured] on notice that he would not be covered, defended or indemnified in existing or future actions under the. policy issued by appellee. . . . [The plaintiff] cannot now avoid . . . an applicable statute of limitations by asserting that the continuing refusal to cover [the insured] was a separate act of bad faith.

*Adamski*, 738 A.2d at 1041–43 (internal quotations and citations omitted).

In *Sandbulte v. Farm Bureau Mutual Insurance Co.*, 343 N.W.2d 457 (Iowa 1984), the insureds brought an action against the insurer alleging breach of an implied duty of good faith to defend the insureds in an action filed against the insureds as a result of an automobile accident. The trial court granted summary judgment to the insurer on the grounds that a two year statute of limitations had run on the claim. The insureds appealed. The appellate court found that a five year statute of limitations was applicable to the cause of action. The opinion in *Sandbulte* then went on to discuss, as follows, the issue of when the statute of limitations began to run:

> The general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit. Such a right exists when events have developed to a point where the injured party is entitled to a legal remedy. . . .

---

**36.** The decision in *Adamski* addressed a number of other issues related to the effective date of the statute that created a statutory bad faith cause of action.

Plaintiffs' action is founded on [the insurer's] alleged breach of its good faith duty to properly defend the [plaintiffs] in the [underlying] personal injury lawsuit. The final disposition of that case, the settlement and judgment effective May 25, 1979, terminated [the insurer's] duty to defend the [the plaintiffs]. Because the insurer cannot breach a duty that no longer exists, the alleged breach complained of occurred as of the date of settlement and judgment.... Therefore, we conclude [the plaintiffs'] right to institute and maintain a suit for an insurer's breach of its good faith duty to defend matured on May 25, 1979, and such date serves as the claim accrual date for purposes of measuring the applicable five year statute of limitations.

We reverse the entry of summary judgment for [the insurer] on Count I of plaintiffs' petition based on our finding that the appropriate period for bringing this action is five years to be measured from May 25, 1979. Plaintiffs' petition filed on October 22, 1981, is clearly within this five year period.

*Sandbulte*, 343 N.W.2d at 462–63 (internal quotations and citations omitted).

In *Brannon v. Continental Casualty Co.*, 137 P.3d 280 (Alaska 2006), the plaintiffs were assigned the rights of an insured against its insurer for refusing to defend the insured in the plaintiffs' prior action against the insured. The plaintiffs, as assignees, sued the insurer for breach of contract, negligence, and breach of the covenant of good faith and fair dealing. The trial court dismissed the action, in part, on the grounds that the bad faith refusal to defend the claim was barred by the statute of limitations. The plaintiffs appealed. The appellate court reversed, observing as follows:

When an action for breach of the duty to defend accrues is an issue of first impression for this court. The [plaintiffs] argue that we should hold that the duty to defend does not accrue until the underlying litigation is resolved—here, on August 28, 2003,

when [the insured's] confession of judgment was entered....

The California Supreme Court has taken a slightly different approach. In *Lambert v. Commonwealth Land Title Insurance Co.*, [282 Cal.Rptr. 445 (1991),] [37] it held that the cause of action for refusal to defend accrues upon discovery of loss or harm, i.e., when the insurer refuses to defend. But the court noted a problem with this accrual date: The underlying litigation may take over two years ... and would allow expiration of the statute of limitations on a lawsuit to vindicate the duty to defend even before the duty itself expires. This grim result is untenable. It therefore held that although the statutory period [for breach of the duty to defend] commences upon the refusal to defend, it is equitably tolled until the underlying action is terminated by final judgment.

We adopt the *Lambert* rule....

. . . .

We therefore hold that although a cause of action for breach of the duty to defend accrues when the insured is notified of the insurance company's refusal to defend, the statute of limitations is equitably tolled until entry of final judgment in the underlying lawsuit.

*Brannon*, 137 P.3d at 284–87 (internal quotations, citations, and footnotes omitted) (footnote added).

■■■ We believe the rule followed in *Daugherty*, with respect to a duty to defend claim,[38] and *Adamski* reflects the best approach. That is, when an insurer refuses to defend its insured in an underlying case, any bad faith involved in that refusal to defend terminates when the refusal to defend is conveyed to the insured. Moreover, we do not believe our ruling in *Klettner* should extend to a first-party bad faith claim because the justification for the rule in *Klettner* simply does not apply in the context of a first-

37. It will be noted that the decision in *Lambert* did not involve a claim for bad faith.

38. We recognize that *Daugherty* addressed the issue of the running of the statute of limitations

on a claim for bad faith refusal to defend and indemnify. We are adopting *Daugherty's* position only on the duty to defend claim.

party bad faith claim.[39] Therefore, we now hold that, in a first-party bad faith claim that is based upon an insurer's refusal to defend, and is brought under W. Va.Code § 33–11–4(9) (2002) (Repl. Vol. 2006) and/or as a common law bad faith claim, the statute of limitations begins to run on the claim when the insured knows or reasonably should have known that the insurer refused to defend him or her in an action. Let us be clear. This holding applies *only* to a bad faith claim predicated on a refusal to defend. We make no ruling as to when the statute of limitations begins to run on a bad faith claim that is predicated on a different theory, *e.g.*, refusal to indemnify.

 In the instant proceeding, the trial court found that the one year statute of limitations applicable to statutory and common law bad faith causes of action was triggered on October 23, 2000, the date VIR notified Mr. Noland that it would not provide coverage to him in the action against him by BARH.[40] The circuit court also found that Mr. Noland did not seek to amend his complaint against VIR to assert statutory and common law bad faith claims against Mr. Stocks, Ms. Hyman, COA and KHA until July 15, 2004. Under these specific facts, the circuit court concluded that the statutory and

common law bad faith claims against Mr. Stocks, Ms. Hyman, COA and KHA were barred by the statute of limitations. We agree. We therefore affirm the dismissals of Mr. Noland's claims against these parties.[41]

## IV.

### CONCLUSION

We affirm the circuit court's Rule 12(b)(6) orders dismissing the bad faith claims against Mr. Stocks, Ms. Hyman, COA and KHA. However, we reverse that part of the circuit court's partial summary judgment order which found that VIR did not owe Mr. Noland a duty to defend him after August 1, 2000. We further direct the circuit court to enter an order finding that VIR owed a duty to defend Mr. Noland from the date of the third-party complaint filed against him by BARH until final termination of that third-party litigation.

Affirmed, in part; Reversed, in part; and Remanded.

---

**39.** The Legislature's abolishment of a third-party bad faith claim has, in effect, abrogated the decision in *Klettner*. *See* note 33, *supra*.

**40.** Mr. Noland has not disputed the notification date.

**41.** We also agree with the circuit court's ruling that the amendment to the complaint to add Mr. Stocks, Ms. Hyman, COA and KHA as defendants did not relate back to the filing date of the original complaint. With respect to the relation back doctrine we have held:

Under Rule 15(c)(3) of the West Virginia Rules of Civil Procedure [1998], an amendment to a complaint changing a defendant or the naming of a defendant will relate back to the date the plaintiff filed the original complaint if: (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence as that asserted in the original complaint; (2) the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named; (3) *the defendant either knew or should have known that he or she would have been*

*named in the original complaint had it not been for a mistake;* and (4) notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint.

Syl. pt. 4, *Brooks v. Isinghood*, 213 W.Va. 675, 584 S.E.2d 531 (2003) (emphasis added). The circuit court ruled that there was no evidence to show that a "mistake" had been made by Mr. Noland in failing to name the defendants in the original complaint. Mr. Noland's only explanation is that he was continuing to investigate the case to determine all of the parties that should be joined as defendants. This explanation does not qualify as a mistake. *See* Syl. pt. 7, *Brooks, id.* ("Under Rule 15(c)(3)(B) of the West Virginia Rules of Civil Procedure [1998], a 'mistake concerning the identity of the proper party' can include a mistake by a plaintiff of either law or fact, so long as the plaintiff's mistake resulted in a failure to identify, and assert a claim against, the proper defendant. A court considering whether a mistake has occurred should focus on whether the failure to include the proper defendant was an error and not a deliberate strategy.").