IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1203

_____

**FILED**

**March 28, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MOUNTAIN STATE COLLEGE,
Defendant Below, Petitioner

v.

SHERYL HOLSINGER, SANDRA R. CARPENTER AND
MARY J. YEATER,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Judge
Civil Action No. 98-C-1497

REVERSED AND REMANDED

_____

Submitted: March 5, 2013
Filed: March 28, 2013

John Philip Melick, Esq.               Bren J. Pomponio, Esq.
Richard Grady Ford, Esq.               Daniel F. Hedges, Esq.
Jackson Kelly PLLC                     Mountain State Justice Inc.
Charleston, West Virginia              Charleston, West Virginia
Counsel for the Petitioner             Counsel for the Respondents

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

2.     "Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration." Syl. pt. 1, *Kanawha Banking & Trust Co. v. Gilbert*, 131 W. Va. 88, 46 S.E.2d 225 (1947).

3.     "Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley v. Cummings*, 212 W. Va. 275, 569 S.E.2d 796 (2002).

4.     "A court of equity is without jurisdiction to entertain a suit based on an alleged fraudulent misrepresentation to the prejudice of the complaining party, where the sole relief sought therein is the recovery of damages. In such a case the remedy of the

injured party at law is plain, adequate and complete." Syl. pt. 2, *Lake O'Woods v. Wilhelm*, 126 W. Va. 447, 28 S.E.2d 915 (1944).

5.      "Equity will not entertain a suit to recover damages for a fraud which amounts to a tort remediable by an action at law for fraud and deceit." Syl pt. 1, *Wilt v. Crim*, 87 W. Va. 626, 105 S.E. 812 (1921).

6.      "Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false." Syl. pt. 1, *Horton v. Tyree*, 104 W. Va. 238, 139 S.E. 737 (1927).

Per Curiam:

Petitioner Mountain State College, defendant below, appeals the July 20, 2011, amended judgment order of the Circuit Court of Kanawha County that granted judgment in relevant part in favor of the respondents who were plaintiffs below and graduates of the petitioner college's legal assisting program. In its order, the circuit court found that the enrollment agreement between the college and the respondents was unconscionable and induced by unconscionable conduct. For the reasons that follow, we reverse and remand this case to the circuit court for the entry of judgment as a matter of law in favor of Mountain State College.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Mountain State College (hereinafter "the college") is a for-profit community college located in Parkersburg, West Virginia.[1] The respondents graduated from the college's legal assisting program with associate degrees. Respondent Sherry Holsinger graduated in September, 1992. Respondents Sandra Carpenter and Mary Yeater Murphy graduated in December, 1992. Prior to attending the college the respondents were high school graduates and worked in low-wage jobs.

---

[1] The petitioner college is not to be confused with the former Mountain State University located in Beckley, West Virginia.

1

In June, 1998, the respondents filed a complaint against the college and several other parties.[2] By the time the respondents' case came to trial in the Circuit Court of Kanawha County in May, 2010, the college was the only defendant remaining. The gravamen of the respondents' complaint was that the college induced the respondents to enroll in the college's legal assisting program by verbally guaranteeing legal assistant jobs to the respondents after graduation.

At trial, Respondent Sandra Carpenter testified that employees of the college represented to her prior to enrollment that legal assistants would be in high demand by the time she graduated, that she could make up to $40,000 a year in a legal assistant position, and that the college's job placement office placed 95% of graduates in jobs. She further testified that after graduating she never obtained a legal assistant position despite sending out 50 resumes and having one interview. Finally, she testified that she now owes $42,319.00 in student loans.

Respondent Sherry Holsinger also testified that a college employee promised her there would be a great demand for legal assistants. According to Ms. Holsinger, this employee told her that she would make between $24.00 and $27.00 an hour as a legal assistant. She further testified that despite doing everything she was told to do by the job placement office, she never received a position as a legal assistant. She indicated that she is now in default on her student loan debt of $56,685.52. In addition,

---

[2] In April 1999, the respondents filed an amended complaint.

Ms. Holsinger stated that despite her desire to work, she will not do so because the federal government will garnish her wages. Finally, she stated that the government had begun taking her income tax refunds as a result of her default in repayment of her student loans.

The third respondent, Mary Yeater Murphy, testified at trial that prior to enrolling in the legal assistant program she spoke to a man named Chris in the college's admissions office who informed her that she could make between $30,000 and $40,000 a year as a legal assistant. According to Ms. Murphy, Chris guaranteed that she would receive a legal assistant position if she completed the college's program, stating that she would "fall into" a job as a result of the efforts of the college's placement office. Ms. Murphy further testified that Chris informed her of a survey conducted by the college which showed that 95% of local attorneys would be looking to hire legal assistants. Ms. Murphy explained that after her graduation, she received a list from the job placement office with from 30 to 50 attorneys' names on it. She sent out resumes to these attorneys and conducted follow-up phone calls, but never received a job as a legal assistant. According to Ms. Murphy, she actively sought a legal assistant position for about two years after her graduation with no success. Finally, Ms. Murphy indicated that she now owes between $27,933.16 and $45,000 in student loans.[3]

---

[3] Ms. Murphy's testimony regarding the amount of her student loan is unclear.

After the respondents closed their case-in-chief, the college moved for judgment as a matter of law. The circuit court granted the college's motion with regard to the respondents' fraudulent inducement claims. The court indicated at that time that the case "is [whittled] down to that unconscionability case. That's the only thing going to the jury." Nevertheless, the circuit court permitted the jury to answer a special interrogatory on the issue of equitable relief based on fraudulent inducement.

In its defense, the college presented the testimony of several of its officials who testified essentially that employees of the college did not guarantee jobs to students in the legal assisting program during the period in question, and that the college assisted its students in finding jobs after graduation.[4]

---

[4] Despite a pre-trial ruling by the circuit court that evidence of "educational malpractice" would not be admissible at trial, the circuit court permitted the admission of such evidence on the basis that the college's witnesses "opened the door" regarding the quality of the respondents' education. The circuit court permitted the respondents to present the testimony of Timothy Amos, a local real estate lawyer, who testified that in the late 1990's, his law firm terminated the employment of two legal assistants who were graduates of the college based on their insufficient skills. He further opined that the college had a bad reputation in the local area for graduating people with insufficient skills. The respondents also were allowed to present as a witness James Skidmore, Chancellor and former Vice Chancellor of the State's Community and Technical College System, who testified that he had received complaints about the college's legal assisting program. According to Mr. Skidmore, he conducted an investigation of the college and found that the college had misrepresented its legal assisting program. The circuit court then permitted the parties to present rebuttal and surrebuttal testimony regarding, *inter alia*, the quality of the college's legal research materials.

4

At the close of the evidence, the circuit court gave two special interrogatories to the jury, one on unconscionable inducement and the other on fraudulent inducement. The jury found that the college engaged in both unconscionable and fraudulent inducement and recommended an award of $30,000 to each respondent in restitution for the student loan debt incurred by each respondent. The jury further recommended an award of $20,000 to each respondent in actual damages.

In its judgment order, the circuit court found unconscionable inducement as a matter of law. In its conclusions of law, the circuit court found as follows:

> 5. The Court may declare any agreement unconscionable and unenforceable, "if the court as a matter of law finds: (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, or (b) Any . . . part of the agreement to have been unconscionable at the time it was made." W. Va. Code § 46A-2-121(1).
> 6. When there is a claim of an unconscionable contract, state law requires a full evidentiary presentation. See id. § 46A-2-121(2). Parties must be allowed to present evidence as to the contract's commercial setting, purpose, and effect:
>
> > A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to the plaintiffs. A bargain may be unconscionable if there is "gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party. . . ." Gross inadequacy in bargaining power may exist where consumers are totally ignorant of the implications of what they are signing, or where the parties involved in the transaction include a national corporate lender on one side and

5

> unsophisticated, uneducated consumers on the other.
>
> . . . .
>
> Inasmuch as the evidence before the court suggests that the bargaining power of the plaintiffs may have been grossly inadequate and that the plaintiffs may not have had any meaningful alternative to obtaining loans from defendants, a question of fact exists as to whether the transactions were unconscionable.

Hager v. American Gen. Fin., Inc., 37 F.Supp.2d 778, 786-87 (S.D.W. Va. 1999) (citations omitted); see also Knapp v. American Gen. Fin., Inc., 111 F.Supp.2d 758, 764-65 (S.D.W. Va. 2000 (summary judgment inappropriate).

7. The disparity of bargaining positions in this situation was nearly identical to a circumstance the Supreme Court of Appeals of West Virginia concluded was "grossly unequal." See Arnold v. United Cos. Lending Corp., 204 W. Va. 229, 236, 511 S.E.2d 854, 861 (1998).

8. The Court **CONCLUDES** the loan was induced by unconscionable conduct due to the following:

(a) The initial misrepresentation that there would be a great demand for paralegal jobs in the Parkersburg area; and

(b) The misrepresentations that the Defendant would place students in jobs as paralegals;

9. The Court **CONCLUDES** that the agreement for enrollment was so one-sided insofar as the Defendant received the significant tuition from the Plaintiffs but provided no educational or job placement services in return. [T]he agreement was so one sided that it shocks the conscience of the Court.

10. Having concluded that the loan was induced by unconscionable conduct, the Court **CONCLUDES** that the agreements were unenforceable as a matter of law.

11. Each Plaintiff is entitled to restitution of $30,000 on their student loans.

12. Each Plaintiff is entitled to actual damages in the amount of $20,000.

6

The college's subsequent motion for judgment as a matter of law or, in the alternative, motion for a new trial was denied in relevant part by the circuit court in its July 20, 2011, amended judgment order.[5]

## II.  STANDARD OF REVIEW

The college appeals the circuit court's denial of its motion for judgment as a matter of law. We have held that "[t]he appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*." Syl. pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009). We further have elaborated concerning our standard of review that

> [w]hen this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

*Id.* at Syl. pt. 2. Guided by this standard, we now consider the matter before us.

---

[5] In the circuit court's July 20, 2011, amended judgment order and stay of execution pending appeal, the court granted relief to the college solely in ruling that the prejudgment interest on tuition awarded in its original judgment order was already included in the $30,000 in restitution. In all other respects, the circuit court denied the college's motion for judgment as a matter of law.

7

## III. DISCUSSION

## 1. Applicability of Consumer Credit Protection Act

The college asserts error in the circuit court's finding that the college violated W. Va. Code § 46A-2-121 (1996), which is part of the West Virginia Consumer Credit and Protection Act ("the Act"). The circuit court did not make a specific finding that the Act applies to this case but apparently presumed the Act's applicability in ruling that the college violated W. Va. Code § 46A-2-121. It is the college's position that the Act applies only to creditors and that the college is not a creditor under the facts of this case.

The respondents counter that W. Va. Code § 46A-2-121(1) expressly applies "to a transaction which is or gives rise to a consumer credit sale." The respondents posit that the transaction at issue, which is the enrollment agreement, clearly falls under the definition of consumer credit sale in W. Va. Code § 46A-1-102(13)(a) (1996), which provides:

> (13)(a) Except as provided in paragraph (b), "consumer credit sale" is a sale of goods, services or an interest in land in which:
> (i) Credit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card;
> (ii) The buyer is a person other than an organization;
> (iii) The goods, services or interest in land are purchased primarily for a personal, family, household or agricultural purpose;
> (iv) Either the debt is payable in installments or a sales finance charge is made; and

(v) With respect to a sale of goods or services, the amount financed does not exceed forty-five thousand dollars or the sale is of a factory-built home as defined in section two [§ 37-15-2], article fifteen, chapter thirty-seven of this code.

(b) "Consumer credit sale" does not include a sale in which the seller allows the buyer to purchase goods or services pursuant to a lender credit card or similar arrangement.

The respondents assert that the college is the seller of services that are financed by credit – specifically student loans. The respondents explain that they signed an enrollment agreement expressly stating that they would obtain student loans to pay their tuition, and that this agreement otherwise meets the requirements of a consumer credit sale in the above quoted code section. The respondents conclude that the college's enrollment agreement falls under the Act's definition of a consumer credit sale.

Upon close examination of the definition of a consumer credit sale in W. Va. Code § 46A-1-102(13), this Court concludes that the enrollment agreement between the respondents and the college does not constitute a consumer credit sale.  A basic rule in determining the meaning of a statute is "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). We believe that the language of W. Va. Code § 46A-1-102(13) is clear and unambiguous.

The code section provides in part that a "'consumer credit sale' is a sale . . . of services . . . in which: (i) Credit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card[.]" By its

9

plain terms, to constitute a consumer credit sale, credit is granted to the consumer *by a seller* who regularly engages in credit transactions of the same kind *or* pursuant to a seller credit card. *See also Black's Law Dictionary* 1454 (9th ed. 2009) (defining "consumer credit sale" as "[a] sale in which the seller extends credit to the consumer."). In the instant case, credit was not granted to the respondents by the college, which is the seller of education services, nor did the college grant credit to the respondents pursuant to a seller credit card. Instead, credit was granted to the respondents in the form of student loans by parties no longer involved in this case. To put it simply, the college as the seller of education services did not extend credit to the respondents for the payment of those services. As a result, the enrollment agreement between the respondents and the college does not meet the definition of a consumer credit sale under W. Va. Code § 46A-1-102(13)(a)(i). Accordingly, the respondents do not have cognizable causes of action for unconscionability and inducement by unconscionable conduct pursuant to W. Va. Code § 46A-2-121, and the circuit court's ruling to the contrary constitutes error.

## 2. Unconscionability as a Contract Action

Another issue raised by the college is that the circuit court erred in finding the enrollment agreement between the college and respondents unconscionable under our common law of contracts.[6] The college posits that the enrollment agreement contained no

---

[6] Interestingly, the respondents brought an unconscionability claim against the college as a stand-alone action and not in response to a claim for breach of contract. Unconscionability generally is considered to be an affirmative defense to a claim for (continued . . .)

guarantee of employment and, as a result, there was no evidence that the agreement was unconscionable. Further, the college avers that extrinsic evidence of a job guarantee was not admissible and was not part of the written enrollment agreement. The respondents reply that they properly prevailed on three contract actions below: unconscionability, lack of consideration,[7] and inducement by unconscionable conduct. They further contend that extrinsic evidence of the terms of the enrollment agreement was admissible because the agreement was ambiguous, and the extrinsic evidence was admitted to show fraud and lack of consideration.

The parties do not dispute that the written enrollment agreement between the respondents and the college does not contain a promise of job placement. Rather, the circuit court's finding of unconscionability is based on evidence of the verbal promises of job placement allegedly made by representatives of the college. Therefore, the

---

breach of contract. *See State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W. Va. 486, 729 S.E.2d 808 (2012) (describing unconscionability as a contract defense); *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011) (same); *State ex rel. Anstey v. Davis*, 203 W. Va. 538, 509 S.E.2d 579 (1998) (charactering lack of consideration as a defense); *Dieter Engineering Serv., Inc. v. Parkland Dev., Inc.*, 199 W. Va. 48, 483 S.E.2d 48 (1996) (same).

[7] With regard to the respondents' claim that they prevailed on a lack of consideration claim, we note that the circuit court did not send an interrogatory to the jury on the issue of lack of consideration. In addition, while the circuit court found a lack of consideration as part of its unconscionability analysis in its judgment order, it did not conduct a separate analysis regarding a lack of consideration. Further, as noted previously, the circuit court indicated at trial that the case was limited to the issue of unconscionability.

correctness of the circuit court's ruling on this issue hinges on whether extrinsic evidence was properly admitted to add to the terms of the written enrollment agreement.

The respondents assert that extrinsic evidence of job guarantees properly were admitted on three grounds: to show that the written agreement is ambiguous, to show fraud, and to show a lack of consideration. It has long been our law that

> [e]xtrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

Syl. pt. 1, *Kanawha Banking & Trust Co. v. Gilbert*, 131 W. Va. 88, 46 S.E.2d 225 (1947).

First, the respondents contend that the circuit court properly admitted extrinsic evidence of verbal promises of job placement because the enrollment agreement is ambiguous. According to the respondents, the enrollment agreement is ambiguous because it is silent regarding the guarantee of job placement which the respondents posit is a material term of the agreement.[8] Under our law, "[c]ontract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the

---

[8] The respondents cite the testimony of a college representative that job placement was the primary purpose of enrollment at the college.

phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley v. Cummings*, 212 W. Va. 275, 569 S.E.2d 796 (2002). The respondents failed to show that the enrollment agreement is inconsistent on its face or that parties can have reasonable differences in construing the terms of the agreement. Moreover, the fact that the agreement does not address job placement does not make it ambiguous. Generally, "[a] contract that is silent as to a point is not ambiguous in that regard; the question presented by such silence is determination of the effect of the contract rather than interpreting its language, and the trier of fact may not make such a determination." 17B C.J.S. *Contracts* § 1052 (2013) (footnote omitted). A guarantee of job placement to college graduates is not a provision that generally appears in a college enrollment agreement, and its absence from the agreement at issue did not render the agreement ambiguous. Consequently, because the enrollment agreement is not ambiguous, extrinsic evidence was not admissible to aid in its construction.

Second, the respondents contend that extrinsic evidence of a verbal promise of job placement was admissible below to show fraud. However, the circuit court granted the college's motion for judgment as a matter of law on the fraud claim during the trial. Thus, extrinsic evidence was not admissible to show fraud.

Finally, the respondents aver that extrinsic evidence was admissible to show a lack of consideration.  We disagree. There was no finding below that the written

13

enrollment agreement lacked consideration on its face. Absent such a finding, extrinsic evidence of additional consideration was not admissible to supplement the terms of the written enrollment agreement. Therefore, we conclude that the circuit court erred in ruling that the agreement between the parties was unconscionable based on a lack of consideration.[9]

The circuit court also based its lack of consideration determination on insufficiency of educational services. Specifically, the circuit court determined that the enrollment agreement was unconscionable because "the agreement . . . was so one-sided insofar as the [college] received the significant tuition from the [respondents] but provided no educational . . . services in return." This Court has not recognized the right of a college student to bring an action for educational malpractice against a college or university. While the respondents posit that a finding of lack of consideration based on insufficient educational services is different from a claim for educational malpractice, we fail to see the practical distinction in the context of this case. Further, the respondents did not show that the college failed to provide the educational services set forth in the written

---

[9] With regard to the respondents' claim of inducement by unconscionable conduct, this Court has never recognized the existence of such a claim outside of W. Va. Code § 46A-2-121, which we have found to be inapplicable to the instant facts. Rather, "we have equated [inducement by unconscionable conduct in W. Va. Code § 46A-2-121] with fraudulent conduct." *One Valley Bank of Oak Hill v. Bolen*, 188 W. Va. 687, 691, 425 S.E.2d 829, 833 (1992) (footnote and citations omitted). As noted above, the circuit court granted judgment as a matter of law to the college on the respondents' fraud claim.

enrollment agreement. Therefore, we conclude that the circuit court's finding of a lack of consideration based on insufficient educational services is error.

### 3. Equitable Claim for Fraudulent Inducement

Finally, with regard to the respondents' claim for fraudulent inducement, the circuit court granted the college's motion for judgment as a matter of law on the respondents' fraudulent inducement claim on the basis that the fraud claim was barred by the applicable statute of limitation. Nevertheless, the circuit court sent a special interrogatory to the jury "[o]n the defense of fraudulent inducement" which the jury answered in the affirmative. The respondents assert in their brief to this Court that their claim for fraud sought only equitable relief and therefore was subject to laches and not the statute of limitations.

This Court finds that the circuit court erred to the extent that it granted what it characterized as equitable relief to the respondents on the basis of fraudulent inducement. Because the circuit court granted judgment as a matter of law on the respondents' fraudulent inducement claim on the basis that the claim was time-barred, the respondents did not have an equitable claim for fraudulent inducement.[10] This Court has held that "[a] court of equity is without jurisdiction to entertain a suit based on an alleged

---

[10] The respondents filed their complaint against the college approximately five and one-half years after they graduated from the college.

15

fraudulent misrepresentation to the prejudice of the complaining party, where the sole relief sought therein is the recovery of damages. In such a case the remedy of the injured party at law is plain, adequate and complete." Syl. Pt. 2, *Lake O'Woods v. Wilhelm*, 126 W. Va. 447, 28 S.E.2d 915 (1944). Moreover, we held in syllabus point 1 of *Wilt v. Crim*, 87 W. Va. 626, 105 S.E. 812 (1921), that "[e]quity will not entertain a suit to recover damages for a fraud which amounts to a tort remediable by an action at law for fraud and deceit."

The respondents had an adequate remedy at law for fraudulent inducement based on the alleged misrepresentations of job placement made by college representatives. This Court has long recognized an action for fraudulent inducement as follows:

> Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false.

Syl. pt. 1, *Horton v. Tyree*, 104 W. Va. 238, 139 S.E. 737 (1927). However, the circuit court granted judgment as a matter of law to the college on the respondent's fraudulent inducement claim on the basis that the claim was time barred. Having failed to timely seek their proper legal remedy for damages which was fraudulent inducement, the respondents cannot now obtain damages for fraudulent inducement simply because the

16

damages are characterized as equitable in nature. Therefore, to the extent that the circuit court's award of damages to the respondents was based on a finding of fraudulent inducement, it is error.[11]

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that the circuit court erred in granting relief to the respondents and denying the college's motion for judgment as a matter of law. Therefore, the July 20, 2011, amended judgment order of the Circuit Court of Kanawha County is reversed, and this case is remanded for the entry of judgment as a matter of law in favor of Mountain State College.

Reversed and remanded.

---

[11] In its petition in this Court, the college requested, in the alternative, that this Court reverse and remand for a new trial, and raised several assignments of error to support this request. Because we reverse the circuit court's denial of the college's motion for judgment as a matter of law, we do not find it necessary to address these remaining assignments of error.