IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0291

_____

FILED

**June 16, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHARLES J. EVANS and CYNTHIA B. EVANS, et al.,
Plaintiffs Below, Petitioners

v.

UNITED BANK, INC., a West Virginia Corporation,
STAN McQUADE, Individually, THELMA McQUADE,
and d/b/a McQUADE APPRAISAL SERVICES
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Monroe County
The Honorable Robert A. Irons, Judge
Civil Action No. 09-C-94

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
_____

Submitted: March 10, 2015
Filed: June 16, 2015

John H. Bryan, Esq.
John H. Bryan, Attorney at Law
Union, West Virginia
Counsel for the Petitioners

C. William Davis, Esq.
Richardson & Davis, PLLC
Bluefield, West Virginia
Counsel for the Respondent
United Bank, Inc.

John T. Jessee, Esq.
LeClairRyan
Roanoke, Virginia
Counsel for Respondents
Stan McQuade and McQuade
Appraisal Services

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE KETCHUM concurs in part and dissents in part and reserves the right to filing a separate Opinion.

# SYLLABUS BY THE COURT

1. "'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).'" Syl. Pt. 1, *Longwell v. Bd. of Educ. of the Cnty. of Marshall*, 213 W.Va. 486, 583 S.E.2d 109 (2003).

2. "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syllabus, *Flowers v. City of Morgantown, W.Va.*, 272 S.E.2d 663 (1980)." Syl. Pt. 2, *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981).

3. "'In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.' Syllabus Point 4, *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997)." Syl. Pt. 3, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).

4. "A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc*., 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact." Syl. Pt. 5, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).

5. "The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition to its application." Syl. Pt. 2, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 258 (2009).

Benjamin, Justice:

The instant action is before the Court upon the appeal of thirty-three Petitioners from a Rule 12(b)(6) order dismissing their second amended complaint filed against United Bank and Stan and Thelma McQuade, d/b/a McQuade Appraisal Services. The circuit court ruled that Petitioners' claims of fraud in the inducement, negligence, intentional and/or negligent infliction of emotional distress, breach of fiduciary duty, and constructive fraud were time-barred by the two-year statute of limitations. The circuit court also dismissed Petitioners' claim of breach of implied covenant of good faith and fair dealing on the basis that Petitioners failed to allege a breach of contract. Lastly, the circuit court dismissed Petitioners' detrimental reliance claim, finding that it was improper because they seek money damages, and, alternatively, that it was essentially a restatement of their fraud in the inducement claim. Upon review of the parties' arguments, the record before us on appeal, and applicable legal precedent, we affirm in part, and reverse in part, the circuit court's order and remand this case for further proceedings consistent with this Opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case centers on an alleged fraudulent scheme involving Respondent United Bank and Respondent McQuade Appraisal Services to inflate the value of property in a residential development in Monroe County named Walnut Springs Mountain Reserve ("Walnut Springs") and the circuit court's dismissal of the same

1

pursuant to West Virginia Rule of Civil Procedure 12(b)(6). The Petitioners are all owners of lots in Walnut Springs. Petitioners purchased their respective lots in 2005 and 2006, and United Bank provided the financing. Walnut Springs ultimately failed and was abandoned by the developer, Mountain America, LLC.[1]

This case began with the filing of a civil action on November 30, 2009, by Petitioners Charles J. Evans and Cynthia B. Evans against United Bank. The complaint was amended in July of 2010, to add additional Walnut Springs property owners as plaintiffs and Respondents Stan McQuade and Thelma McQuade, as defendants, individually and doing business as McQuade Appraisal Services (collectively "McQuade").[2] McQuade was engaged by United Bank to perform the appraisals for the Petitioners' lots. In September of 2010, the complaint was amended a second time to add additional plaintiff property owners, all thirty-three of whom are Petitioners herein.

---

[1] Petitioners state that the two developers of Walnut Springs were Washington, DC, attorney Jonathan Halperin and Las Vegas developer Dan "Berg" Schonberger. Walnut Springs, which was advertised in the Washington Post and Farm and Ranch magazine, was allegedly supposed to include a grand lodge with a restaurant, fitness, center, game rooms, and meeting rooms; lakes filled with trout and waterfalls; and underground utilities, none of which came to fruition. The development attracted potential buyers from the suburbs of Washington, D.C., and elsewhere, looking to invest in beautiful mountain real estate subdivision properties.

[2] The first amended complaint also named two United Bank employees as defendants, then-vice president Ray Leon Cooper and Joyce Durham. These two defendants were subsequently dismissed from the suit. Petitioners allege that Mr. Cooper is currently serving time in federal prison for bank fraud.

Specifically, Petitioners alleged the following in their second amended complaint: (1) fraud in the inducement or aiding and abetting fraud in the inducement; (2) negligence; (3) civil conspiracy; (4) punitive damages; (5) intentional or negligent infliction of emotional distress; (6) respondeat superior; (7) breach of implied covenant of good faith and fair dealing; (8) breach of fiduciary duty; (9) constructive fraud; and (10) detrimental reliance.[3]

Petitioners' second amended complaint is based on allegations of bank and appraisal fraud stemming from an allegedly fraudulent transaction occurring in 2005 that led to grossly-inflated lot values at Walnut Springs. Petitioners state that they learned of the fraudulent transaction in late 2009 or early 2010, after serving a subpoena upon McQuade in a companion case against the developers, Monroe County Civil Action No. 09-C-93. Petitioners allege that in 2005, they were told by developers that the property values in Walnut Springs were $50,000 per acre. This value was supposedly justified by an initial transaction in 2005, in which a woman named Chaya Schonberger purchased a 5.88 acre lot for $294,000. This transaction was then used as the "comp" for future appraisals and sales, which appraisals and sales then were used as "comps" for other sales, resulting in a "pyramid" of appraisals and sales all resulting from the Schonberger transaction.

---

[3] Each count is applicable to United Bank, and all but "breach of implied covenant of good faith and fair dealing" are applicable to McQuade.

Petitioners allege, however, that the Schonberger transaction never actually occurred. Chaya Schonberger is actually the mother of one of the developers, Dan Schonberger, who according to Petitioners uses multiple aliases, one of which is "Dan Berg."[4] Petitioners state that the 5.88 acre lot was never a part of Walnut Springs, a fact which Petitioners allege was cleverly disguised by McQuade, who appraised it, and misidentified the deed book and page number to be completely untraceable. Moreover, while Chaya Schonberger did own the 5.88 acres, there was never a sale of the property to her for a price of $294,000.00. Rather, she owned the property the entire time, having purchased it from a third party in 2004 for $99,000.00.[5]

---

[4] In their second amended complaint, Petitioners allege that Dan Berg, who at the time was using a fictitious social security number, was born as Daniel Schonberger. Petitioners contend that he has previously claimed that he was in a car accident and could not remember his real social security number and name.

[5] Petitioners allege that the property was originally 67.5 acres adjoining the Walnut Springs development and was held in her name from the beginning. In the developers' partnership agreement, it notes that the 67.5 acres was owned by Berg and exempt from the agreement's "corporate opportunity clause." Petitioners contend that on or about October 12, 2004, Chaya Schonberger, by and through her son using a power of attorney, conveyed two five acre parcels to two individuals, Shoupe and Chamberland, who were employees of the Walnut Springs development. These sales indicated a per acre value of $15,000.00 per acre. On May 12, 2005, Chaya Schonberger conveyed her remaining 57.5 acres into a limited liability company owned by the developers. The deed from that conveyance excepted 5.88 acres from the conveyance to remain in her name. At that time the 5.88 acre parcel was designated as "Walnut Springs Mountain Reserve Phase 1 Lot 1" and was listed in the books as having been a sale of 5.88 acres for the consideration of $294,000.00.

4

At the same time as the supposed sale of the 5.88 acre lot, a construction loan was taken out through United Bank with loan officer Leon Cooper. Mr. Cooper had a $300,000.00 limit for which he could solely approve loans. He approved the construction loan for a house to be constructed on a 5.88 acre parcel in the Walnut Springs subdivision. While Chaya Schonberger owned the 5.88 acre lot and the house constructed on it, the lot was never owned by Walnut Springs.

Petitioners allege that United Bank was aware of the fraud since 2005, but continued to finance the development using appraisals supported by the Schonberger transaction. Petitioners state that they were not aware of this fraud until 2009 or 2010, when their counsel reviewed the documents provided pursuant to the above-referenced subpoena in the other civil action. According to Petitioners, this discovery is what led to the filing of the second amended complaint in September of 2010.

In February of 2011, Respondents moved to dismiss the case pursuant to Rule 12(b)(6), asserting that except for the claims of breach of implied covenant of good faith and fair dealing and breach of fiduciary duty, Petitioners' claims are barred by the applicable two-year statute of limitations. In its February 27, 2014, order granting the motions to dismiss, the circuit court first addressed United Bank's request that the circuit court take judicial notice of the "adjudicative facts" set forth in *MBMA, LLC*, which was a matter before the Monroe County Commission sitting as the Board of Equalization and

5

Review, the subsequent appeal of that matter to the circuit court in civil action number 07-C-30, and the ultimate appeal to this Court in *Mountain America, LLC, et al. v. Huffman*, 224 W.Va. 669, 687 S.E.2d 768 (2009).

This prior tax appeal involved a challenge to the 2007 assessed values of the lots in Walnut Springs by the Monroe County Assessor. The basis of the challenge, which was presented at a February 7, 2007, evidentiary hearing held before, was that the assessments were excessive and unequal, and not based on the true and actual value of the properties. The parties dispute the level of involvement the individual landowners (the Petitioners herein) had in the 2007 litigation. Petitioners assert that the matter was spear-headed by the developers and the Petitioners were involved only insofar as their names were used. Respondents counter that the Petitioner landowners were the primary challengers to the assessments. Over Petitioners' objection, the circuit court took judicial notice of the adjudicative facts of the tax appeal. In *Mountain America, LLC*, this Court affirmed the circuit court's order that affirmed the assessments. 224 W.Va. 669, 687 S.E.2d 768.

With that ruling in mind, the circuit court found that in the present suit, Petitioners seek to "recover damages from the Defendants on the theory that the Plaintiffs paid more than fair market value for their property because of the alleged wrongful acts of the Defendants." The circuit court then went on to find that Petitioners should have

known of their present claims no later than the hearing before the Board of Equalization and Review on February 7, 2007. The circuit court reasoned, essentially, that if Petitioners were challenging the value of their land in 2007, they should have inquired at that time "as to the identity and conduct of the parties involved in the sales of their property, i.e. the Defendants." The circuit court determined that Petitioners instituted their action on November 30, 2009, more than two years later. As such, the circuit court granted Respondents' motions to dismiss with regard to the claims carrying a two-year statute of limitations.

The circuit court then turned to Petitioners' breach of implied covenant of good faith and fair dealing claim, to which a five-year limitation period applies. The circuit court relied on federal case law in holding that without an allegation of breach of contract, Petitioners could not maintain a claim for breach of implied covenant of good faith and fair dealing. Finally, the circuit court ruled that it was without jurisdiction to entertain the detrimental reliance claim because it is an equitable remedy and Petitioners were expressly seeking monetary relief, and that it was essentially a restatement of their fraud in the inducement claims. Petitioners now appeal to this Court.[6]

---

[6] On or about March 7, 2014, Petitioners filed a "Motion to Alter or Amend Judgment, or in the Alternative Motion for Relief from Judgment." They filed their appeal to this Court on May 18, 2014. By order entered May 29, 2014, the circuit court denied Petitioners' motion.

7

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the West Virginia Rules of Civil Procedure authorizes the filing of a motion requesting dismissal of a claim or counterclaim for "failure to state a claim upon which relief can be granted." W.V.R.C.P. 12(b)(6). "'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syl. Pt. 1, *Longwell v. Bd. of Educ. of the Cnty. of Marshall*, 213 W.Va. 486, 583 S.E.2d 109 (2003).

"'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syllabus, *Flowers v. City of Morgantown, W.Va*., 272 S.E.2d 663 (1980)." Syl. Pt. 2, *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981). *See also*, F.D. Cleckley, R.J. Davis, L.J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6) (Juris Pub. 2006).

## III. ANALYSIS

### A) *Judicial Notice/Statute of Limitations*

The Petitioners allege two separate assignments of error with respect to the circuit court's rulings on the issues of judicial notice and statute of limitations barring

8

Petitioners' claims for fraud in the inducement and aiding and abetting fraud in the inducement, negligence, intentional or negligent infliction of emotional distress/tort of outrage, breach of fiduciary duty, and constructive fraud. First, Petitioners allege that the circuit court erred in finding that the statutes of limitation were tolled under the discovery rule until no later than February 7, 2007, and therefore dismissing their claims as time barred, because the Petitioners each alleged in the second amended complaint that they were unaware of the Schonberger fraud until this litigation began due to the Respondents' attempt to conceal it. Second, Petitioners allege that the circuit court erred in taking judicial notice that the Petitioners were involved in the prior tax assessment appeal and finding that they therefore knew, or should have known, that fraud occurred, that Respondents engaged in it, and that their conduct had a causal relationship to their injuries. Because these assignments of error are interdependent, we will address them collectively.

In dismissing some of the Petitioners' claims based upon the statute of limitations, the circuit court first took judicial notice[7] of the adjudicative facts in *MBMA,*

---

[7] Rule 201 of the West Virginia Rules of Evidence permits courts to take judicial notice of certain facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." W. Va. R. Evid. 201(b). Moreover, "a court may take judicial notice of its own records concerning the same subject matter and
(continued . . .)

9

*LLC*, *et al*., the tax appeal matter before the Monroe County Commission sitting as the Board of Equalization and Review, and the subsequent appeal of that matter to this Court in *Mountain America, LLC v. Huffman*, 224 W. Va. 669, 687 S.E.2d 768. The circuit court held that:

> In the Second Amended Complaint, the Plaintiffs allege that they could not have known of their causes of action until the institution of the present action because the Defendants camouflaged information contained in appraisals requested by United [National Bank] and prepared by the McQuades.
>
> Assuming those allegations to be true, the Court finds that Plaintiffs, by the exercise of reasonable diligence, should have known of their claims no later than the date of their hearing before the Monroe County Board of Equalization and Review. First, the Plaintiffs claimed before the Board that their tax assessments exceeded the true and actual value of their property. Second, the fair market value of Plaintiffs' property is the basis of Plaintiffs' claims against Defendants in this civil action. Third, the Plaintiffs' were represented by counsel and retained a certified general real estate appraiser in connection with their challenges. Fourth, although the Plaintiffs did not present evidence of the fair market value of their respective properties at the hearing, the Plaintiffs had the means to determine the fair market value at that time and should have known that the land they purchased was overvalued. Last, knowing that their land was overvalued, a reasonable person would have inquired as to the identity and conduct of the parties involved in the sales of their property, i.e., the Defendants.
>
> Therefore, the Court finds that the statutes of limitation for Plaintiffs' claims against Defendants were tolled under the discovery rule until no later than February 7, 2007.

substantially the same parties." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 201.03[3][e] (5th ed. 2012).

10

Petitioners do not dispute that the circuit court had the legal power to take judicial notice of the fact that at least some of the Petitioners had previously appealed their tax assessments, and that the developers' attorneys appealed the case on behalf of Mountain America, LLC, resulting in an opinion being issued by this Court. However, the Petitioners dispute that the prior litigation has any relevancy to the allegations in the action currently *sub judice* other than the identities of the real estate involved and possibly some of the Petitioners. Additionally, Petitioners allege that the circuit court erred in dismissing their claims as time barred because each Petitioner alleged in the second amended complaint that they were unaware of the Schonberg fraud until this litigation began because the Respondents attempted to conceal it. They maintain that the Schonberger fraud was never disclosed, or discovered by any individual during the 2007 tax appeal. Petitioners allege that in 2007, they may have known that they suffered damage and injury, but they had no idea of the fraud by Respondents. Petitioners contend that it was not until their counsel came into possession of the appraisals submitted by McQuade that the details of the fraudulent acts became known.

Respondents assert that the circuit court properly took judicial notice of the adjudicative facts in the tax appeal matter because they are relevant to whether the Petitioners' claims were timely filed. Respondent contend that the circuit court correctly ruled that the discovery rule tolled the statute of limitations to February 7, 2007, because

11

this is the date Petitioners challenged their tax assessments, arguing that they exceeded the fair market value. Respondents maintain that in this action, Petitioner again allege the same point they argued in their 2007 tax appeal - that they paid more than market value for their properties. They assert that Petitioners had the means at that time to determine the fair market value of their properties and should have known their land was overvalued. Respondents assert that Petitioners never explained exactly why it took until their counsel reviewed the appraisal information in 2009 and 2010 to allege fraud.

The only named petitioner in *Mountain America, LLC,* 224 W. Va. 669, 687 S.E.2d 768, was Mountain America, LLC, the Walnut Springs developers. We noted in the *Mountain America, LLC* case that, "some four months after the appeal was filed, it is impossible to pick up the court file and determine the name of the Appellants or the tax parcels in question." *Id*., 224 W. Va. at 677, 719 S.E.2d at 776. We further noted that "[a] review of the record of the hearing before the Board of Equalization reveals the names of at least some of the persons contesting their assessments, but this is insufficient for purposes of West Virginia Rules of Civil Procedure Rule 10." *Id*. In the tax appeal, this Court's discussion of Mountain America's arguments centered on due process and equal protection.

> Specifically, the Appellants assert that the tax assessments are excessive and unequal as compared to the 2007 tax assessments of the property of other taxpayers in Monroe County, and that the assessments are the result of the Assessor's improper and discriminatory methods in violation of the Appellant's rights to equal and uniform taxation under

12

the West Virginia Constitution and in violation of the Appellant's rights to equal protection of the law under the United States Constitution.

*Id*. at 674, 687 S.E.2d at 773. This Court noted that there was no evidence in the record to suggest that the lots in Walnut Springs were excessively valued by the Monroe County Tax Assessor:

Mountain America had the burden of proving that the Assessor's valuation was excessive, but it did not offer any evidence of the true and actual value of the residual property. At the hearing before the County Commission, Mountain America did not offer an appraiser's opinion of the value of its residue, any evidence as to what it paid to purchase this residue, or any evidence as to the listing price for any of the unsold residue property.

*Id*. at 687, 687 S.E.2d at 786.

This Court noted that the calculated unit price per acre as determined by the Assessor was $29,236.00 and that as an accommodation to the landowners, the Assessor lowered the amount to $26,900.00 by striking the two highest sales and the two lowest sales out of the development - which was properly determined by the Assessor to be based on "market value" and "true and actual value." *Id.* at 675, 687 S.E.2d at 774. This Court found no abuse of the Assessor's discretion and affirmed the circuit court's order affirming the County Commission's decision upholding the assessment. *Id.* at 688, 687 S.E.2d at 787.

13

In short, there was no evidence of record presented to this Court in *Mountain America, LLC* that the subject properties were overvalued. *Mountain America, LLC* was about challenging tax assessments and methodology. There were no allegations, or representations, that the landowners overpaid for their properties. They were challenging the increase of assessments from being minimal one year, to being increased exponentially the next. The central component of the case *sub judice* is that the Petitioners allege they never paid real market value for their properties because the market was fabricated - a fact that was never revealed in the 2007 tax assessment appeals. Petitioners maintain that it was never revealed because the primary perpetrators of the fraud, the developers, were prosecuting the tax appeal. The Petitioners allege that the circuit court mischaracterized the Petitioners' as merely people who are upset that they overpaid for real estate. However, Petitioners now contend that they were defrauded and were induced to buy into a fraudulent real estate scheme.

In syllabus point three of *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009), this Court held as follows:

> "In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Syllabus Point 4, Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997).

14

In syllabus point five of *Dunn*, 225 W.Va. 43, 689 S.E.2d 255, we stated

A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

(Emphasis added). "The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition to its application." Syl. Pt. 2, *Dunn*, 689 S.E.2d 258.

In the second amended complaint, the Petitioners allege facts which sufficiently demonstrate that the discovery rule applies. The Petitioners allege that they were unaware until the initiation of this litigation that the fraud had occurred; that the

15

"appraisals contained information which was camouflaged and nearly devoid of identifying information . . ."; and that the bank, the appraisers, and Walnut Springs Mountain Reserve could have known of the fraud and misconduct which occurred. The only issue as a matter of law for the circuit court to decide was what underlying statute applied. It is undisputed that the underlying statute of limitations for Petitioners' fraud in the inducement, negligence, intentional or negligent infliction of emotional distress, breach of fiduciary duty, and constructive fraud claims is two years.[8] Thus, the circuit court correctly invoked the discovery rule. However, by erroneously taking judicial notice of the tax appeal matter previously before this Court, it arbitrarily initiated the statute of limitation for a date which is factually different from the allegations made by the Petitioners in the second amended complaint.

As this Court has previously noted, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [should be] rarely granted." *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 606, 245 S.E.2d 157, 159 (1978). More specifically, "[t]he trial court should not dismiss a complaint merely because it doubts

---

[8] Pursuant to W. Va. Code § 55-2-12, a two-year statute of limitations applies to Petitioners' fraud in the inducement claim, negligence, claim, intentional or negligent infliction of emotional distress claim, breach of fiduciary duty claim, and constructive fraud claim. Under W. Va. Code § 55-2-6, a five-year statute of limitations applies to a breach of implied covenant of good faith and fair dealing. As to Petitioners' detrimental reliance claim, "our law is clear that there is no statute of limitation for claims seeking equitable relief." *Dunn*, 225 W. Va. at 54, 689 S.E.2d at 266.

that the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings." *Id*. (citing Wright & Miller, Federal Practice and Procedure: Civil § 1216 (1969)).

Given that under 12(b)(6) the complaint is construed in the light most favorable to the plaintiff, we conclude that the court erroneously imposed the February 7, 2007, date as the point at which Petitioners should have known of their claims. Accordingly, we reverse the circuit court's dismissal of these claims.

**B)** *Breach of Implied Covenant of Good Faith and Fair Dealing*

Next, Petitioners allege that the circuit court erred in dismissing their claims for breach of the implied covenant of good faith and fair dealing under the conclusion that no such tort cause of action exists under West Virginia law.[9] The second amended complaint alleges that

> United Bank, due to its contractual and fiduciary relationship with the Plaintiffs, owed the Plaintiffs an implied covenant of good faith and fair dealing. Specifically, this duty arose when Defendant United Bank accepted the Plaintiffs as customers/clients and entered into agreements to loan them money secured by the subject lots in WSMR.

---

[9] The Petitioners' claim for breach of the implied covenant of good faith and fair dealing was asserted only against United Bank, not McQuade.

17

Petitioners do not assert that United Bank breached any of those contracts. In dismissing the claim, the circuit court noted that federal courts in West Virginia have held that an implied covenant of good faith and fair dealing does not exist in West Virginia absent a breach of contract claim. *See Powell v. Bank of Am., N.A.*, 842 F.Supp.2d 966, 981 (S.D.W.Va. 2012)("The West Virginia Supreme Court of Appeals has declined to recognize an independent claim for a breach of the common law duty of good faith, and has instead held that such a claim sounds in breach of contract.")(Internal citations omitted); *see also Wittenberg v. Wells Fargo Bank, N.A.*, 852 F.Supp.2d 731, 750 (N.D.W.Va. 2012)("West Virginia does not recognize a stand-alone cause of action for failure to exercise contractual discretion in good faith. As such, a claim for breach of the implied covenant of good faith and fair dealing can only survive if the borrower pleads an express breach of contract claim.")(Internal citations omitted).

In its order, the circuit court stated that the federal district courts have based this opinion on this Court's logic in *Highmark West Virginia, Inc. v. Jamie*, 221 W. Va. 487, 492, 655 S.E.2d 509, 514 (2007):

> In that regard, while we recognize that it has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim, *Stand Energy Corp. v. Columbia Gas Transmission*, 373 F.Supp. 2d 631, 644 (S.D.W.Va. 2005), and that "[a]n implied contract and an express one covering the identical subject matter cannot exist at the same time," syl. pt. 3, in part, *Rosenbaum v. Price Construction Company*, 117 W. Va. 160, 184 S.E. 261 (1936), the allegations of Count 3 construed in the light favorable to the appellant demonstrate

18

that, while inartfully drafted as a claim upon an implied covenant, Count 3 is, in reality, a breach of contract claim covering matters not identical to those specified in Counts 1 and 2.

*Id.* at 492, 655 S.E.2d at 514.

Petitioners allege that in *Highmark*, the Court ultimately held that the cause of action for breach of the implied covenant of good faith and fair dealing would proceed under the guise of breach of contract since there was already a breach of contract claim which did not contain identical allegations. *Id.* Petitioners assert that *Highmark* did not hold that there is no independent cause of action for breach of implied covenant of good faith and fair dealing. Rather, the issue was not addressed definitively one way or the other.

Our federal district court has observed that West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." *Stand Energy Corp. v. Columbia Gas Transmission*, 373 F.Supp.2d 631, 644 (S.D.W.Va. 2005) (*quoting Hoffmaster v. Guiffrida*, 630 F.Supp. 1289, 1291 (S.D.W.Va. 1986)). However, by the same token, this Court has observed that "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." *Barn–Chestnut, Inc. v. CFM Dev. Corp.*, 193 W.Va. 565, 457 S.E.2d 502, 509 (1995).

19

Most recently in *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 587, 746 S.E.2d 568, 578 (2013), this Court reiterated that

> this covenant "does not provide a cause of action apart from a breach of contract claim." *Highmark West Virginia, Inc. v. Jamie*, 221 W.Va. 487, 492, 655 S.E.2d 509, 514 (2007). It has been observed "that the West Virginia Supreme Court of Appeals has declined to recognize an independent claim for a breach of the common law duty of good faith and has instead held that such a claim sounds in breach of contract." *Corder v. Countrywide Home Loans, Inc.*, No. 2:10-0738, 2011 WL 289343 at *3 (S.D.W.Va.2011) (internal quotation marks and citation omitted).

Based upon our review of the applicable law, we affirm the circuit court's ruling that the Petitioners' failure to allege a breach of contract was fatal to their claim for a breach of the implied covenant of good faith and fair dealing.

**C)** *Detrimental Reliance*

Petitioners lastly assert that the circuit court erred in dismissing the Petitioners' claims for detrimental reliance pursuant to Rule 12(b)(6) for the same reasons that the circuit court erred in dismissing their fraud claim. Petitioners contend that to the extent that the detrimental reliance claim is a restatement of the fraud claim, or another count for fraud, they reassert their arguments against the dismissal of the fraud claim as were argued *supra*.

20

In dismissing Petitioners' claim for detrimental reliance, the circuit court found that it lacked jurisdiction because the detrimental reliance claim sounded in equity and Petitioners were not seeking equitable relief, but rather sought to recover monetary damages. *See* Syl. Pt. 4, *Mountain State Coll. v. Holsinger*, 230 W. Va. 678, 742 S.E.2d 94 (2013)("A court of equity is without jurisdiction to entertain a suit based on an alleged fraudulent misrepresentation to the prejudice of the complaining party, where the sole relief sought therein is the recovery of damages. In such a case the remedy of the injured party at law is plain, adequate and complete.")[10] Additionally, the circuit court found that:

> Plaintiffs' detrimental reliance claim is essentially a restatement of their fraud in the inducement claims under Count One. Accordingly, the Court finds that the Plaintiffs had an adequate remedy at law, albeit untimely filed, pursuant to their fraud in the inducement claims and are precluded from bringing an equitable claim for detrimental reliance.

United Bank asserts that Petitioners' argument fails to meet the requirements of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure because it fails to address the circuit court's first basis for dismissal of the detrimental reliance claim for lack of a proper claim for equitable relief. Therefore, United Bank contends that any alleged error on this ruling should be deemed waived for the purposes of this appeal.

---

[10] *See* Syl. Pt. 2, *Miller v. Robinson*, 171 W. Va. 653, 301 S.E.2d 610 (1983) ("The procedural distinctions between law and equity have been abolished under Rule 2 of our Rules of Civil Procedure.")

*Noland v. Virginia Ins. Reciprocal,* 224 W.Va. 372, 378, 686 S.E.2d 23, 29 (2009) ("Issues not raised on appeal or merely mentioned in passing are deemed waived.") (*citing Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998)). We agree with United Bank's argument and conclude that Petitioners fail to address the substantive merits of the circuit court's ruling and, thus, the issue has been waived for purposes of appeal. The circuit court's ruling dismissing the Petitioners' detrimental reliance claim is therefore affirmed.

## IV.  CONCLUSION

For the foregoing reasons, the circuit court's rulings dismissing Petitioners' claims for breach of implied covenant of good faith and fair dealing and detrimental reliance are affirmed. However, the circuit court's ruling dismissing Petitioners' claims for fraud in the inducement and aiding and abetting fraud in the inducement, negligence, intentional or negligent infliction of emotional distress/tort of outrage, breach of fiduciary duty, civil conspiracy, respondeat superior, and punitive damages is reversed and remanded for further proceedings consistent with this opinion.[11]

---

[11] Respondent United Bank contends that Petitioners' brief only substantively addresses the dismissal of the fraud and breach of the implied covenant of good faith and fair dealing claims, and that Petitioners present no independent argument pertaining to the dismissal of their claims for negligence, intentional or negligent infliction of emotional distress/tort of outrage, breach of fiduciary duty, civil conspiracy and respondeat superior or their claim for punitive damages. Therefore, United Bank claims that any error in regard to the circuit court's ruling as to these claims should be deemed

(continued . . .)

**Affirmed in part, reversed in part, and remanded.**

waived for purposes of this appeal. *See Noland v. Virginia Insurance Reciprocal*, 224 W.Va. 372, 378, 686 S.E.2d 23, 29 (2009). The Petitioners reply that they challenged the circuit court's dismissal of all the tort claims which were dismissed on statute of limitations grounds and are seeking a reversal of that ruling, in its entirety. While Petitioners' brief discusses, at length, the dates surrounding their discovery of the alleged fraud, we find that they have not relegated their appeal only specifically to the fraudulent inducement claim. It is clear from the briefing that Petitioners challenge the entirety of the circuit court's ruling.

Furthermore, McQuade alleges that Petitioners Mike and Vivian Hollandsworth, Jan Jerge, James Carroll, Jr., and Jim and Shayna Mackey all purchased their properties before the Schonberger transaction. Because Petitioners' fraud theory begins with the Schonberger transaction, Respondents allege that the fact that these purchases preceded the Schonberger transaction necessarily defeats the claims of these Petitioners. Moreover, they claim that the Mackeys did not finance their purchase through United Bank, but instead used a home equity loan. Therefore, their property was not appraised by McQuade or anyone else, and thus, McQuade could not have committed fraud as to them. To the extent that the circuit court did not address the merits of these arguments below, it is premature for the Court to address them at this juncture. The circuit court will have opportunity to address these arguments on remand and issue a ruling accordingly.

23